In the Matter of Donald I.
CARPENTER, Jr., Debtor,

CHASE MANHATTAN BANK (U.S.A.)
N.A., Plaintiff,

v.

Donald I. CARPENTER, Jr., Defendant.

Bankruptcy No. 83–04788A.
Adv. No. 84–0210A.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Oct. 1, 1985.

725

John F. Bradford, Marietta, Ga., for plaintiff.

Clark & Smith, Atlanta, Ga., for defendant.

## MEMORANDUM OF OPINION AND ORDER

A.D. KAHN, Bankruptcy Judge.

Plaintiff filed the above-styled adversary complaint to determine the dischargeability

of a debt pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(2)(B) and 523(a)(4). A trial was held on April 8 at which counsel for Plaintiff and Defendant-Debtor were present. Defendant-Debtor did not attend. The matter was then taken under advisement. The Court finds that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Based upon the testimony at trial, Defendant-Debtor's deposition, which was introduced into evidence by Plaintiff at the trial, and other evidence, the Court now makes the following findings of fact and conclusions of law.

## I.

On or about May 31, 1983, Defendant-Debtor responded to an invitation from Plaintiff to apply for a Visa credit card. The request form was entitled "Chase Manhattan Visa Request Certificate" and stated that Plaintiff was holding a Visa card for Defendant-Debtor with a credit line of $2,000.00. Plaintiff's Exhibit 1. In filling in the required information on the "invitation," Defendant-Debtor stated that his employer's name was Mortgage Services Group and that his position was a loan officer.

There is no evidence that Plaintiff ever verified this information or that it made any independent inquiry into the creditworthiness of Defendant-Debtor. The president and manager of Mortgage Services Group, Inc. testified at trial that Defendant-Debtor was in fact never employed by his company. However, he did state that Defendant-Debtor was an independent agent who originated a loan in May of 1983 for which Mortgage Services Group, Inc. paid him a commission. Transcript at 8.

It appears to the Court that Defendant-Debtor had employment problems from at least as early as November of 1982 when his employment was terminated from First National Bank of Atlanta. Prior to that he had been president of the Bank of Mississippi in Booneville, Mississippi. In June of 1981, he resigned that position and moved to Atlanta, Georgia where he was employed as a branch manager by First National Bank of Atlanta. His employment was terminated because he was suffering from "mental depression." Defendant-Debtor's Deposition at 7 [hereinafter referred to as "Deposition"]. Subsequently, Defendant-Debtor worked in some capacity for Southern Mortgage Associates, Mortgage Services Group, Inc., and Mortgage Investment and Development Company. In August of 1983, he was hired by Fidelity National Mortgage Company. That employment was terminated in October 1983. Deposition at 9. Defendant-Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on October 27, 1983. The record is unclear, but at some point during this time, he was suffering from alcohol abuse. *Id.* at 67.

It was during his relationship with Mortgage Services Group, Inc. that Defendant-Debtor responded to Plaintiff's "invitation" to receive a Visa credit card. There is no evidence before the Court that Plaintiff made a credit check of Defendant-Debtor. He received his card in June 1983 and appears to have used it for the first time on June 30, 1983 for a cash advance of $300.00. His first monthly statement, however, was dated June 25, 1983 and included only the annual fee for the card of $20.00. Plaintiff's Exhibit 2. The second statement, dated July 25, 1983, included the cash advance of $300.00, $74.89 in purchases, and the $20.00 annual fee which had been carried over from the previous month. The minimum payment due was $40.00. Plaintiff's Exhibit 3. The third statement, dated August 25, 1983, included additional purchases of $1,177.70. Defendant-Debtor paid the required minimum payment of $40.00 which was credited on this statement. Plaintiff's Exhibit 4. The fourth statement, dated September 25, 1983, included $1,113.22 in additional purchases. Plaintiff's Exhibit 5. The fifth statement, dated October 25, 1983, included additional purchases of $211.79. Plaintiff's Exhibit 6. The last statement, dated November 25, 1983, included additional purchases of $89.01 and a credit of $62.25. The new balance was $2,677.02 in purchases with

interest and $308.52 in cash advances with interest. The last transaction occurred on October 26, 1983. Plaintiff's Exhibit 7. Defendant-Debtor made only one payment of $40.00 which was credited to his account on the August statement.

Defendant-Debtor's income during this period is unclear. It appears from his deposition, that Defendant-Debtor earned a salary while he was employed by Southern Mortgage Associates, a $600.00 commission from Mortgage Services Group, Inc., and an advance from Fidelity National Mortgage Company. Deposition at 70. There is nothing in the record establishing the exact amount of his income.

The bulk of the charges made were for restaurants, bars, gasoline, and groceries. Defendant-Debtor had separated from his wife in July and appears to have used the credit card for some of his living expenses. There is no evidence before the Court regarding when Defendant-Debtor first thought of filing his bankruptcy petition.

## II.

Plaintiff contends that the debt in question should be held to be nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(2)(B), and 523(a)(4). Each section will be discussed separately below.

### A. Section 523(a)(2)(A)

Section 523(a)(2)(A) provides that a debt is nondischargeable if it is one for "obtaining money, property, services, or an extension, renewal, or refinance of credit by—false pretenses, a false representation, or actual fraud...." In the context of a credit card debt, two lines of cases have developed.

The first line of cases is clearly the majority view. These cases hold that, when one uses a credit card, one is making an implied representation that he has the ability and intention to pay for the charge incurred. *See, e.g., American Bank and Trust Co. v. Lipsey (In re Lipsey,)* 41 B.R. 255 (Bankr.E.D.Pa.1984); *Mid-American Nat'l. Bank and Trust Co. v. Higgs (In re Higgs),* 39 B.R. 181 (Bankr.N.D.Ohio 1984);

*Montgomery Ward & Co. v. LaBuda (In re LaBuda),* 37 B.R. 47 (Bankr.M.D.Fla. 1984); *Mercantile Trust Co. v. Schmidt (In re Schmidt),* 36 B.R. 459 (E.D.Mo. 1983); *Montgomery Ward & Co., Inc. v. Borah (In re Borah),* 36 B.R. 535 (Bankr. M.D.Fla.1983). "[A] credit card purchase made with knowledge by the purchaser of his inability or obvious lack of intent to pay is tantamount to obtaining property through false pretenses." *Montgomery Ward & Co. v. LaBuda,* 37 B.R. at 48.

The other line of cases is an outgrowth of the case of *Davison-Paxon Co. v. Caldwell,* 115 F.2d 189 (5th Cir.1940), *cert. denied,* 313 U.S. 564, 61 S.Ct. 841, 85 L.Ed. 1523 (1941), in which the former Fifth Circuit Court of Appeals held that the Bankruptcy Act "does not except from discharge, debts created by obtaining credit through concealment of insolvency and present inability to pay." *Id.* at 191. The Eleventh Circuit Court of Appeals recognized the dramatic change in the debtor/creditor relationship with the widespread use of credit cards in the case of *First Nat'l Bank of Mobile v. Roddenberry,* 701 F.2d 927 (11th Cir.1983). However, it noted that, although *Davison-Paxon* had been criticized, it has never been overruled. It went on to hold that *Davison-Paxon* retains its validity in the context of a one-on-one debtor/creditor relationship. In the context of third-party transactions (i.e., credit card transactions), the analysis for nondischargeability "must be guided by the principles underlying *Davison-Paxon* that discharge exceptions are to be narrowly construed and that improvident creditors are not to be afforded special protections in bankruptcy for the assumption of common business risks." 701 F.2d at 932. The Court stated:

> Bearing in mind these considerations, we hold that the voluntary assumption of risk on the part of a bank continues until it is clearly shown that the bank unequivocally and unconditionally revoked the right of the cardholder to further *possession and use* of the card, and until the cardholder is aware of this revocation. A card issuer, acting upon its own judg-

ment, may elect to continue to extend credit; it shall be presumed to do so until clear revocation has taken place. Only after such clear revocation has been communicated to the cardholder will further use of the card result in liabilities obtained by "false pretenses or false representations" within the meaning of section 17a(2)'s exemption from discharge. *Id.* (emphasis in original).

The Roddenberry case was decided under § 17(a)(2) of the Bankruptcy Act of 1898 which excepted from discharge "liabilities for obtaining money or property by false pretenses or false representations." The Court left open the question of whether the addition of the phrase "actual fraud" in the new Bankruptcy Code of 1978 would alter the result it reached. *Id.* at 929–930, n. 3.

Plaintiff urges this Court to follow the line of cases using the "implied representation" analysis. Most of the cases decided after *Roddenberry* do not discuss the case. *See, e.g., American Bank and Trust Co. v. Lipsey (In re Lipsey),* 41 B.R. 255 (Bankr. E.D.Pa.1984); *Central Bank v. Kramer (In re Kramer),* 38 B.R. 80 (Bankr.W.D.La. 1984); *Montgomery Ward & Co. v. LaBuda (In re LaBuda),* 37 B.R. 47 (Bankr.M.D. Fla.1984). Other cases are highly critical of the decision. *See, e.g., Citibank v. Senty (In re Senty),* 42 B.R. 456 (Bankr.S.D.N. Y.1984); *First Tenn. Bank v. Wilson (In re Wilson),* 32 B.R. 772 (Bankr.E.D.Tenn. 1983).

This Court, however, is bound by the holdings of the Eleventh Circuit, and, although *Roddenberry* was decided under the Bankruptcy Act of 1898, it remains of precedential value. The Eleventh Circuit has held that "[s]ince the differences between § 523(a)(2)(A) and its predecessor, § 17(a)(2) of the Bankruptcy Act, are negligible, case law construing § 17(a)(2) serves as a useful guide in applying § 523(a)(2)(A)." *Birmingham Trust Nat'l. Bank v. Case,* 755 F.2d 1474, (11th Cir. 1985).

■ Therefore, this Court must decline to follow the "implied representation" analysis used by the majority of courts in non-

dischargeability cases involving the use of a credit card. To follow the majority, would be to ignore the guidelines set by the Eleventh Circuit. The "implied representation" analysis places credit card companies in a special category of creditors and makes their debts too easily nondischargeable. Generally, people use credit cards because they do not have the present ability to pay. In fact, this is how credit card companies make their profits. They charge high interest rates on the unpaid portion of their card-holders' accounts. "Banks are willing to risk non-payment of debts because that risk is factored into the finance charges. Because the risk is voluntary and calculated, section 17a(2) should not be construed to afford additional protection for those who unwisely permit or encourage debtors to exceed their credit limits." *Roddenberry,* 701 F.2d at 932.

In an attempt to distinguish the *Roddenberry* case, Plaintiff argues that

Under the circumstances of this case, the Plaintiff cannot be accused of improvidence. The brevity of time in which the charges were run up together with Mr. Carpenter's payment history and pattern of multiple small charges ... belie any negligence on the part of the Plaintiff in revoking the card.

"Trial Brief for the Plaintiff" at 17.

However, the Court has found that Plaintiff made absolutely no credit check of Defendant-Debtor. If it had it would have found that he was in financial difficulty and had been employed by or been associated with three or four different companies within six months. Whether that constitutes improvidence is not for this Court to decide. Plaintiff undertook the risk of nonpayment upon its issuing Defendant-Debtor a credit card without a credit check. That risk continued until the card was revoked, but Plaintiff never revoked the card.

A credit card company has the absolute right to revoke its credit card. It also has complete control over setting the credit limit for its accounts. As long as credit card companies insist on sending out pre-printed

"invitations" to apply for their credit card with the credit limits already appearing on the "invitation", the Court will assume that the company has voluntarily undertaken the risk of nonpayment. Furthermore, the Court must also assume that when a credit card company issues a credit card with no credit check of the applicant, it has made a calculated business decision to assume the risk of nonpayment. Such a company cannot now turn to this Court and ask for special consideration because the debt owed is being discharged in bankruptcy.

■ This Court is, however, of the opinion that actual fraud, with which the Court in *Roddenberry* did not deal, will prevent a debt from being discharged. Where purchases are made through the use of a credit card with no intention at that time to repay the debt, that debt must be held to be nondischargeable pursuant to § 523(a)(2)(A). To hold otherwise would be to ignore the plain language of the statute and to reward dishonest debtors. In order to prove actual fraud, a creditor must establish the following five elements:

1. that the debtor made representations;
2. that at the time he knew the representations were false;
3. that he made them with the intention and purpose of deceiving the creditor;
4. that the creditor reasonably relied on such representations;
5. that the creditor sustained the alleged damages as a result of the misrepresentation.

*Munafo v. Kovacs (In re Kovacs)*, 42 B.R. 1, 3 (Bankr.D.Mass.1982). The creditor must establish these elements by clear and convincing evidence. *J.C. Penney Co., Inc. v. Love (In re Love)*, 47 B.R. 213, 215 (Bankr.W.D.Mo.1985); *Car Village Buick-Opel, Inc. v. DeRosa (In re DeRosa)*, 20 B.R. 307, 311 (Bankr.S.D.N.Y.1982).

■ Turning now to the facts in the case *sub judice*, it is clear that Plaintiff never revoked Defendant-Debtor's credit card. Therefore, under the *Roddenberry* holding,

the debt was not incurred through false pretenses or false representations. In an attempt to use the "implied representation" analysis, Plaintiff maintains that the Court must conclude that Defendant-Debtor never intended to pay for the charges he incurred because Defendant-Debtor was "hopelessly insolvent" during the period the charges were incurred. "Trial Brief for the Plaintiff" at 14–16. Plaintiff argues that

> at the time Mr. Carpenter was running up the instant debt (July—October, 1983), his financial problems had reached serious proportions. *Id.* [Defendant-Debtor's Deposition at 69]. Under these circumstances he must have known, or clearly should have known, that he had no means of paying for the charges he was making. This is particularly true since the Debtor had extensive employment experience in the field of banking a [sic] finance. Dep. at 5 *et seq.*

"Trial Brief for the Plaintiff" at 15. Defendant-Debtor explained that he had expected to receive certain commissions. "I was spending in anticipation of drawing some pretty healthy commissions that didn't materialize. That's most of what it was. I spent it before I collected it and then I didn't collect it." Deposition at 72. *See also,* Deposition at 57, 66, and 70.

■ Plaintiff would have the Court "bootstrap" the fact that Defendant-Debtor was having financial difficulty into an intent to defraud Plaintiff. This is what is wrong with the "implied representation" analysis; intent to defraud is too easily implied from the fact a debtor was having financial problems. From the evidence before the Court, there is nothing to suggest that Defendant-Debtor did not intend to pay for the charges he was incurring. He was spending in anticipation of earnings which he never received. Plaintiff extended him credit. Although, through hindsight, this extension of credit was unwise, it does not make the debt nondischargeable.

■ Plaintiff also contends that it has established the five elements of actual

fraud listed above. First, it argues that Defendant-Debtor made a false representation when he stated on the "invitation" to apply for the credit card that he was employed by Mortgage Services Group as a "loan officer." Plaintiff's Exhibit 1. The Court finds that, while this may have been inaccurate, it was not fraudulent in nature. The evidence before the Court establishes that Defendant-Debtor did have a relationship with Mortgage Services Group, Inc. at the time he responded to Plaintiff's "invitation." Defendant-Debtor was an independent loan originator, and he did originate a loan for which Mortgage Services Group, Inc. paid him a commission. If Plaintiff had wanted more accurate information, it could have easily contacted Mortgage Services Group, Inc. It chose not to do so. That was a calculated risk, and it may not now come before this Court to complain of the inaccuracy. There is absolutely no evidence before the Court that Defendant-Debtor intended to mislead Plaintiff.

■ Plaintiff also contends that "[b]y his use of the credit card, the Debtor represented that he would comply with this contractual agreement." "Trial Brief for the Plaintiff" at 22. Mere violations of any contractual provisions do not constitute fraud. *Roddenberry,* 701 F.2d at 932.

■ Under the Court's holding today, when one uses a charge card, one is representing that he has the present intention to pay for the charge incurred. Plaintiff argues that Defendant-Debtor misrepresented that he had the intent to pay for the charges he incurred. Plaintiff lists factors which other Courts have considered in deciding whether a debtor had the intention to pay for charges. These include:

1. the length of time between the charges made and the filing of bankruptcy;

2. whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;

3. the number of charges made;

4. the amount of the charges;

5. the financial condition of the debtor at the time the charges are made;

6. whether the charges were above the credit limit of the account;

7. did the debtor make multiple charges on the same day;

8. whether or not the debtor was employed;

9. the debtor's prospects for employment;

10. financial sophistication of the debtor;

11. whether there was a sudden change in the debtor's buying habits; and

12. whether the purchases were made for luxuries or necessities.

See "Trial Brief for Plaintiff" at 23. The Court finds that a determination of whether a particular debtor had no intention to repay the charges is, of course, a case by case decision, in which the above factors may or may not be helpful.

■ Plaintiff emphasizes that Defendant-Debtor used his credit card on almost a daily basis; he used the card several times a day; and he also had multiple invoices from the same establishment on the same day. "Trial Brief for Plaintiff" at 24. Defendant-Debtor was using the credit card for food and liquor. On many days he used it for both lunch and dinner. See Deposition, generally at 31–62. Plaintiff implies that the multiple charges at the same establishment on the same day were an attempt by Defendant-Debtor to avoid having the establishment call in to obtain approval of charges over $50.00. Defendant-Debtor explained that the multiple charges resulted from a request from the establishment itself when a new waitress or bar tender would come on duty or when he would leave the bar area to go into the restaurant area. Deposition at 58, 67, and 68. Many of these multiple billings do not add up to $50.00. See for example charges at Lingerlong, Inc. on August 3, 1983, Plaintiff's Exhibit 4. The Court finds Defendant-Debtor's explanation of these multiple charges plausible, and, without more,

will not imply fraudulent intent on behalf of Defendant-Debtor.

The other factors contained in Plaintiff's list do not, in this case, result in the conclusion that Defendant-Debtor did not intend to pay for the charges at the time he incurred them. Plaintiff has failed to establish the first element required to prove actual fraud. There is no evidence that Defendant-Debtor made any false representations when he used the charge card. In order to prove actual fraud, a creditor must establish each and every one of the five elements. Because the Court finds that Plaintiff has failed to prove the first element, that Defendant-Debtor made a false representation, the Court need not discuss the other four elements as they are moot.

### B. Section 523(a)(2)(B)

■■■ Although not argued in its Trial Brief, Plaintiff included in its complaint an allegation that the debt in question is nondischargeable pursuant to § 523(a)(2)(B), which provides that debts

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive

are nondischargeable. It is unclear upon which writing Plaintiff is basing this allegation. If it is the "invitation" to apply for the credit card which Defendant-Debtor filled in and returned to Plaintiff, the Court has already stated above that Defendant-Debtor did not intend to deceive Plaintiff by stating he was employed by Mortgage Services Group, Inc. If it is the individual charge slips or receipts which Defendant-Debtor signed, the Court finds that these do not constitute statements of Defendant-

Debtor's financial condition. Therefore, the Court finds that § 523(a)(2)(B) will not prevent the debt in question from being discharged in bankruptcy.

### C. Section 523(a)(4)

■■■ Plaintiff has also brought the instant complaint under § 523(a)(4), which provides that a debt is nondischargeable if it is one for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." However, Plaintiff has not addressed this Code section in its Trial Brief. The Court finds that Plaintiff has presented no evidence of embezzlement or larceny on the part of Defendant-Debtor, and there was certainly no trust relationship between Plaintiff and Defendant-Debtor.

### D. Conclusion

The Court has carefully considered all of Plaintiff's arguments that this debt should be nondischargeable. However, this Court cannot reach such a holding without giving unwarranted additional protection to credit card companies. This debt, although unique because it resulted from third-party transactions, is nothing more than an unwise extension of credit, and that extension of credit was solely within Plaintiff's control. Defendant-Debtor received the extension of credit and used it. There is no evidence that he did so with fraudulent intent or in bad faith. Therefore, this Court must conclude that the debt in question is dischargeable pursuant to §§ 523(a)(2)(A), 523(a)(2)(B) and 523(a)(4).

■■■ This holding should in no way be interpreted to mean that the Court condones actual fraud in connection with the use of a credit card. Debts incurred through such fraudulent actions will be held to be nondischargeable. The Court simply holds that the "revocation rule" of *Roddenberry* applies, except where a creditor can prove by clear and convincing evidence that the debt was incurred through actual fraud, *i.e.*, where the debtor made the charges with no intention of paying for

them. The Court is cognizant of the fact that subjective intent is difficult to prove. However, it may be inferred from the actions of a debtor and all the attendant facts in a particular case. Considering the same in the case *sub judice*, the Court cannot infer fraudulent intent on the part of the Defendant-Debtor.

## ORDER

In accordance with the reasoning above, it is the Order of the Court that the debt owed by Defendant-Debtor to Plaintiff be, and the same hereby is, DISCHARGEABLE pursuant to the provisions of the Bankruptcy Code.

An appropriate judgment is entered contemporaneously herewith.