In the Matter of Lance D. JOHNSON, Sarah Jane Johnson, Debtors.

AMERICAN EXPRESS TRAVEL RELATED SERVICES CO., INC., Plaintiff,

v.

Lance D. JOHNSON, Sarah Johnson a/k/a Sarajane M. Johnson, Defendants.

Bankruptcy No. 91–30610.
Adv. No. 91–3035.

United States Bankruptcy Court,
M.D. Georgia,
Athens Division.

May 28, 1992.

D. Ruth Primm, Atlanta, Ga., for plaintiff.

James C. Warnes and Steve H. McElwee, Athens, Ga., for defendants.

Ernest V. Harris, Chapter 7 Trustee, Athens, Ga.

STATEMENT OF THE CASE

ROBERT F. HERSHNER, Jr., Chief Judge.

Lance D. Johnson and Sarah Johnson, a/k/a Sarajane M. Johnson, Defendants, filed a petition under Chapter 7 of the Bankruptcy Code on May 7, 1991. American Express Travel Related Services Co., Inc., Plaintiff, filed a "Complaint to Determine Dischargeability of Debt" on July 29, 1991. Defendants filed their answer and counterclaim on August 19, 1991. Plaintiff filed its answer to the counterclaim on August 28, 1991. The complaint came on for trial on March 19, 1992. The Court, having considered the evidence presented and the

arguments of counsel, now publishes this memorandum opinion.

## FINDINGS OF FACT

Defendants are husband and wife. They have two children. Mr. Johnson was issued an American Express card in 1974. He was a college student at that time. Mrs. Johnson was issued a card with the same account number after Defendants married.

Mr. Johnson testified that he understood that an American Express card was a charge card rather than a revolving credit card. Under the card terms, Defendants agreed to pay the account balance in full each month. A delinquent fee and interest would be added to any unpaid balance. The card terms provide for payment of fifteen percent attorney fees if the account is collected by an attorney.

For much of their married life, Defendants' living expenses usually exceeded their income. They admit that they were financially irresponsible and lived beyond their means. Defendants received substantial financial help from Mrs. Johnson's mother, Helen Marbut. Mrs. Johnson testified that this help was a loan and not a gift. There were no definite arrangements to repay Mrs. Marbut. Mrs. Johnson testified that her mother told Defendants that they could repay her when they were able or when she was old and needed their help and a place to live. Mrs. Marbut was not listed as a creditor in the bankruptcy schedules. Mrs. Marbut helped Defendants to encourage them to live in Athens so she would be near Defendants' children, her grandchildren. Defendants never repaid any money to Mrs. Marbut. Mrs. Marbut became ill and did not provide much help during the year preceding the filing of Defendants' bankruptcy petition.

During 1990, Mr. Johnson was employed full time and Mrs. Johnson worked at irregular part-time jobs. Their 1990 federal tax return shows their adjusted gross income as $39,057. They claimed, as itemized deductions, unreimbursed medical expenses of $6,080, real estate taxes of $1,920, home mortgage interest of $11,153, personal interest of $19,488, contributions of $1,991, and unreimbursed employee travel expenses of $9,254. These itemized expenses total $49,886.

The tax return shows that Defendants sold certain stock in Southern Company Services, Inc. in July 1990 for $9,080. Mrs. Johnson testified that this was stock that "my mother had for me." Mrs. Marbut wanted Defendants to sell the stock and take a vacation in Hawaii with their children.

Mr. Johnson quit his job in December 1990. He testified that he had to choose between his job and his marriage. He was required to socialize and drink with his boss and clients. The job also required that·he travel. Mr. Johnson was unemployed until April 1, 1991, when he began teaching at a vocational-technical school in Vidalia, Georgia. His starting salary was $34,000 per year. Mrs. Johnson worked as "Christmas help" from October 1990 through December 1990. She made about $200 every two weeks. She was unemployed from January through April 1991. She is currently working as a substitute teacher in Vidalia, Georgia.

During the latter part of 1990, Defendants reached an agreement with many of their other credit card creditors. Under the agreements, Defendants made lump-sum payments and were to resume monthly payments in June 1991. Defendants gave a second mortgage on their residence to obtain the funds for the lump-sum payments.

Defendants satisfactorily maintained their account with Plaintiff until Mr. Johnson quit his job in December 1990. In January 1991, Defendants listed their residence in Athens, Georgia, for sale at $169,000. They owed $120,000 in mortgage debt. The real estate commission would have been ten percent. Defendants intended to use the net proceeds to pay various debts, including their debt to Plaintiff. Mrs. Marbut had provided the down payment for the residence. Defendants did not execute a promissory note or deed to secure debt in favor of Mrs. Marbut. When Defendants moved to Vidalia in April

1991, they were not able to make the mortgage payments on their Athens residence. The second mortgage holder foreclosed. Mrs. Johnson understands that the residence later sold for about $138,000.

Plaintiff contends that charges made by Defendants in 1991 should be nondischargeable. Mr. Johnson testified that Defendants' spending habits during 1991 were not significantly different from prior years.

Defendants' "Summary of Account(s)" with Plaintiff were admitted into evidence. The Summary of Account dated February 13, 1991, shows that Defendants paid their balance in full on January 27, 1991. Thus, the only charges in question are those shown on the February 13, 1991, statement and subsequent statements.

The summaries show the following account status:

| Statement Closing Date | New Charges | Delinquent Charges | Payments | New Balance |
|---|---|---|---|---|
| 2–13–91 | $ 2,215.08 | –0– | $ 72.44 (credit) | $ 2,142.64 |
| 3–16–91 | 7,322.09 | –0– | 47.00 (Refund Credit) | 9,417.73 |
| 4–15–91 | 2,130.56 | $235.44 | –0– | 11,783.73 |
| 5–16–91 | 65.60 | 288.71 | –0– | 12,138.04 |
| Total | $11,733.33 + | $524.15 – | $119.44 = | $12,138.04 |

Simply stated, Defendants obtained $11,733.33 in merchandise and services without making any payments.

During January 1991, Defendants went to Hilton Head, South Carolina. They charged on their American Express card $97.54 for a car rental, $61.39 for food, $625.59 for lodging, and $1,296.81 for merchandise. These charges were not related to Mr. Johnson's seeking employment.

During February 1991, Defendants charged $310.29 at Kyoto of Athens for their son's birthday party. Mrs. Johnson testified that a guest started a fire in the restaurant, and Defendants paid for the damage. Defendants charged $303.46 at the Hyatt Regency and $37.29 for food in Savannah on February 16, 1991. Mr. Johnson testified that he was considering seeking employment in Savannah and wanted to visit the town and the schools. He did not have a job offer or interview scheduled when Defendants made the trip. Defendants charged $550 during two stays at the Marriott Lenox in Atlanta. Mr. Johnson testified that he had job interviews at or near the hotel and wanted to be rested.

His residence in Athens was about one and one-half hours from the hotel. Defendants also charged over $1,000 for merchandise in February 1991. Mrs. Johnson testified that she did not remember what merchandise was purchased during January through March 1991. She testified that she has been "in a daze" since October 1989. She suffers from and has received treatment for depression.

In March 1991, Defendants charged $517.80 at the Marriott Lenox. Mr. Johnson had a job interview there. Defendants also charged $2,084.88 on a trip to Los Angeles. This included $1,266 for air fare, $169.32 for a car rental, and $649.56 for lodging. Mr. Johnson testified that advisors at the University of Georgia told him that job opportunities were good in Los Angeles. He went there without any scheduled job interviews but "called on" about ten community colleges and left his resume. Defendants charged over $3,000 for merchandise in March 1991. Plaintiff contends that Mr. Johnson already had accepted a job in Vidalia when Defendants went to Los Angeles. Mr. Johnson testi-

fied that he did not have the job in Vidalia until he signed the employment contract on April 1, 1991.

Mr. Johnson testified that he almost always stayed at Marriott hotels. He began staying at Marriott hotels when he worked for the Quaker Oats Company.

Defendants made an appointment to see a bankruptcy attorney on March 14, 1991. Defendants' last substantial charges on their American Express card were on March 19, 1991. These charges were for hotel and car rental in Los Angeles. Defendants returned from their trip to Los Angeles on March 26, 1991. Defendants met with their bankruptcy attorney on March 28, 1991. They made only one charge, for $19.95, after they met with the bankruptcy attorney. Defendants filed their bankruptcy petition on May 7, 1991. Thus, Defendants made only one small charge on their American Express card during the forty days preceding their bankruptcy filing. They did not obtain any cash advances during 1991.

Defendants did not make any charges after Plaintiff requested that they surrender their American Express cards.

Defendants' bankruptcy schedules show that they had about twenty-five charge cards or credit cards. Defendants owed about $116,000 on these cards. Their only real asset was their residence, which they valued at $129,000. The residence was encumbered by two mortgages totaling about $120,000. They valued their personal property, including a checking account, at $1,105. Mrs. Johnson testified that the personal property was valued at "yard sale prices."

Defendants owed Plaintiff $12,138.04 when their bankruptcy petition was filed. Plaintiff had not requested that Defendants surrender their American Express cards. All but three of Defendants' other credit cards had been surrendered or revoked by the end of 1990.

Mr. Johnson has a masters degree in education. He is pursing a doctorate degree from the University of Georgia. Mrs.

Johnson needs about thirty hours to complete a degree in political science.

## CONCLUSIONS OF LAW

Plaintiff asks the Court to find Defendants' debt to be nondischargeable. Plaintiff contends that Defendants knew they could not repay the balance in full each month, that they did not intend to repay the balance, and that the charges were incurred through false pretenses, false representations, or actual fraud. Plaintiff also seeks interest, attorney fees, and costs as provided by the card agreement. Plaintiff contends that certain of the charges were for luxury goods. Section 523(a)(2) of the Bankruptcy Code[1] provides, in part:

(a) A discharge under section 727, 1141[,] 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

. . . .

(C) for purposes of subparagraph (A) of this paragraph, consumer debts owed to a single creditor and aggregating more than $500 for "luxury goods or services" incurred by an individual debtor on or within forty days before the order for relief under this title, or cash advances aggregating more than $1,000 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within twenty days before the order for relief under this title, are presumed to be nondischargeable; "luxury goods or services" do not include goods or services reasonably acquired for the support or maintenance of the debtor or a dependent of the debtor; an extension of consumer credit under an open end credit plan is to be defined for

---

1. 11 U.S.C.A. § 523(a)(2) (West Supp.1992).

purposes of this subparagraph as it is defined in the Consumer Credit Protection Act (15 U.S.C. 1601 et seq.).

11 U.S.C.A. § 523(a)(2)(A) and (C) (West Supp.1992).

■ Plaintiff bears the burden of proving the nondischargeability of the debt by a preponderance of the evidence. *Grogan v. Garner,* — U.S. —, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

The evidence presented clearly shows that Defendants did not use their American Express cards to obtain any goods or services aggregating more than $500 within forty days of filing their bankruptcy petition. Nor did Defendants obtain any cash advances within twenty days of the bankruptcy filing. The Court is persuaded that section 523(a)(2)(C) does not apply.

"Since the differences between § 523(a)(2)(A) and its predecessor, § 17(a)(2) of the Bankruptcy Act, are negligible, case law construing § 17(a)(2) serves as a useful guide in applying § 523(a)(2)(A) of the Code." *Birmingham Trust National Bank v. Case,* 755 F.2d 1474, 1476 (11th Cir.1985).

In *First National Bank of Mobile v. Roddenberry,*[2] the Eleventh Circuit Court of Appeals considered the nondischargeability of credit card debts under section 17a.(2) of the Bankruptcy Act of 1898. Section 17a.(2) provided:

§ 17 Debts Not Affected by a Discharge. a. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as ... (2) are liabilities for obtaining money or property by false pretenses .or false representations.

The circuit court stated:

It is our conclusion that in transactions involving bank credit cards the analysis must involve a determination of whether the bank unconditionally revoked the cardholder's right to use and possession of that card and if so when the cardholder became aware of such revocation. Debts incurred prior to unconditional rev-

ocation may be dischargeable. However, debts incurred with the knowledge that one is not entitled to possession or use of a credit card are nondischargeable.

701 F.2d at 928.

The circuit court continued, stating:

Bearing in mind these considerations, we hold that the voluntary assumption of risk on the part of a bank continues until it is clearly shown that the bank unequivocally and unconditionally revoked the right of the cardholder to further *possession and use* of the card, and until the cardholder is aware of this revocation. A card issuer, acting upon its own judgment, may elect to continue to extend credit; it shall be presumed to do so until clear revocation has taken place. Only after such clear revocation has been communicated to the cardholder will further use of the card result in liabilities obtained by "false pretenses or false representations" within the meaning of section 17a(2)'s exemption from discharge. Purchases made with knowledge that one is not entitled to either use or possession constitute the type of deception intended to be exempted from discharge. It is more than an intentional concealment of insolvency; it is an affirmative misrepresentation that one is entitled to possess and use the card.

... Debts arising prior to the communication of revocation are part of the risk assumed by the bank. During this period, the bank risked non-payment by authorizing conditional possession of the cards. This risk was assumed despite the Roddenberrys' apparent inability to pay, and the credit they obtained during this period was implicitly authorized by the bank. However, once the unequivocal revocation of credit privileges was communicated, the bank no longer agreed to assume this risk. Beyond the point of revocation, Mrs. Roddenberry was not merely concealing an inability to pay, but rather was affirmatively de-

**2.** 701 F.2d 927 (11th Cir.1983).

frauding the bank with whom she no longer had any type of relationship.

701 F.2d at 932–33 (emphasis in original).

This Court is bound by the holding of the Eleventh Circuit Court of Appeals. Although *Roddenberry* was decided under the Bankruptcy Act of 1898, it remains of precedential value.

■ Plaintiff did not revoke Defendants' use of their American Express cards until after the charges at issue were made. The Court is persuaded that these charges were not incurred through false pretenses or false representations within the meaning of section 523(a)(2)(A).

■ The current Bankruptcy Code includes "actual fraud" as a ground for non-dischargeability. Defendants understood that they were required to pay the account balance in full each month. They failed to do this during 1991. However, mere violations of a credit card contract, standing alone, do not constitute fraud. *First Federal of Jacksonville v. Landen (In re Landen)*, 95 B.R. 826, 828 (Bankr.M.D.Fla. 1989); *Chase Manhattan Bank (U.S.A.) N.A. v. Carpenter (In re Carpenter)*, 53 B.R. 724, 730 (Bankr.N.D.Ga.1985).

In *Roddenberry,* the circuit court stated:

Although [section 523(a)(2)(A) ] is substantially identical to section 17a, *Brown v. Felsen,* 442 U.S. 127, 129 n. 1, 99 S.Ct. 2205, 2208 n. 1, 60 L.Ed.2d 767 (1979), Congress has incorporated certain modifications which may alter the outcome in certain cases where debtors obtain credit without a present intention of repayment. Indeed, one commentator suggests that Congress' addition of the term "actual fraud" to the "false pretenses and false representation" language of section 17a was intended to eliminate the distinction between overt and implied misrepresentation drawn in *Davison–Paxon.* [115 F.2d 189 (5th Cir.1940) ] At this time, we express no opinion with respect to this construction of section 523(a)(2)(A).

701 F.2d at 929–30, n. 3.

Several courts have held that a debtor commits actual fraud when the debtor makes charges that he has no intention to pay. *See Citibank South Dakota, N.A. v. Dougherty (In re Dougherty )*, 84 B.R. 653, 657 (Bankr.9th Cir.1988); *In re Carpenter,* 53 B.R. at 729. In determining the debtor's intent, courts have considered the following factors:

1. The length of time between the charges made and the filing of bankruptcy;
2. Whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;
3. The number of charges made;
4. The amount of the charges;
5. The financial condition of the debtor at the time the charges are made;
6. Whether the charges were above the credit limit of the account;
7. Whether the debtor made multiple charges on the same day;
8. Whether or not the debtor was employed;
9. The debtor's prospects for employment;
10. Financial sophistication of the debtor;
11. Whether there was a sudden change in the debtor's buying habits; and
12. Whether the purchases were made for luxuries or necessities.

*In re Landen,* 95 B.R. at 829; *In re Dougherty,* 84 B.R. at 657; *Sears Roebuck and Co. v. Faulk (In re Faulk )*, 69 B.R. 743, 757 (Bankr.N.D.Ind.1986); *In re Carpenter,* 53 B.R. at 730.

The facts show that Defendants made only two significant charges after they made an appointment to see a bankruptcy attorney. These charges were for car rental and lodging in Los Angeles. This job-hunting trip was planned and scheduled prior to making the appointment. These charges were the only significant charges made during the eight weeks preceding the bankruptcy filing.

Many charges during 1991 were for amounts more that $50. Defendants seldom made more than two charges on the same day. The Court is persuaded that Defendants were not attempting to avoid

inquiry checks by merchants on the status of their account with Plaintiff.

Mr. Johnson testified that Defendants' spending habits during 1991 were not significantly different from their pattern in the past. He testified that they stayed at the same hotels as in the past.

Defendants were not employed during the time the charges in question were made. However, they had always lived beyond their means. Many of the charges were made by Mr. Johnson while he was seeking employment. They were attempting to sell their residence in Athens to pay Plaintiff's debt.

The Court notes that Defendants purchased a substantial amount of merchandise during 1991 on their American Express card. Their bankruptcy schedules, however, show that their personal property was valued at $1,105. Mrs. Johnson testified that this property was valued at "yard sale prices." The Court expresses no opinion about the adequacy of Defendants' explanation. That issue is best dealt with under other provisions of the Bankruptcy Code.

The Court is not persuaded that Plaintiff has carried its burden of proof.

Defendants filed a counterclaim asking the Court to award them reasonable attorney fees in defending this complaint.

**3.** *See* 11 U.S.C.A. § 523(d) (West Supp.1992).

Defendants contend that Plaintiff's position was not substantially justified.[3] Defendants did not pursue the counterclaim at trial. The Court is persuaded that Plaintiff's position was substantially justified and declines to award attorney fees to Defendants.

An order in accordance with this memorandum opinion will be entered this date.

## ORDER

In accordance with the memorandum opinion entered this date; it is

ORDERED that the relief sought by American Express Travel Related Services Co., Inc., Plaintiff, in its "Complaint to Determine Dischargeability of Debt" filed on the 29th day of July, 1991, hereby is denied; and it is further

ORDERED that the request by Lance D. Johnson and Sarah Johnson, a/k/a Sarajane M. Johnson, Defendants, for an award of reasonable attorney fees in defending this complaint hereby is denied.

SO ORDERED.