**IN RE: Christy Nicole ALLEN, Debtor.**

**American Express Centurion Bank, Plaintiff,**

v.

**Christy Nicole Allen, Defendant.**

Case No. 13–52220–pwb
Adversary No. 13–5176–pwb

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Signed April 1, 2015

Thomas W. Joyce, Jones, Cork & Miller LLP, Macon, GA, for Plaintiff.

Howard P. Slomka, Slomka Law Firm, Atlanta, GA, for Defendant.

## CONCLUSIONS OF LAW ON RESERVED ISSUE AND ORDER FOR ENTRY OF FINAL JUDGMENT

Paul W. Bonapfel, U.S. Bankruptcy Court Judge

Christy Nicole Allen filed a Chapter 7 petition on February 4, 2013. American Express Centurion Bank ("American Express") timely filed a complaint for a determination that certain debts she incurred between July 16 and September 9, 2012, on a credit card it issued are excepted from discharge under 11 U.S.C.A. § 523(a)(2) because of her actual fraud.[1]

After a trial, the Court entered findings of fact and partial conclusions of law pursuant to Fed. R. Civ. P. 52(a), *applicable under* Fed. R. Bankr. P. 7052. [Docket No. 18; 2015 WL 459291 (Jan. 15, 2015) ]. Based on its analysis of the evidence, the Court made two factual findings. First, Ms. Allen intended to pay all of the debt she incurred. Second, she made charges of $7,974.45 during the four days (September 6–9) ending on the day (September 9) on which she knew that a minimum payment of $1,199.75 was due that she would not timely pay.

The Court concluded that all of the earlier charges were not excepted from discharge in view of her intent to pay them. The Court reserved ruling, however, on whether Ms. Allen had engaged in actual fraud by charging $7,974.45 in the four days preceding the due date of her minimum payment when she knew she would not make the minimum payment on that due date.

The Court phrased the legal issue this way: Does the holder of a credit card commit fraud when she incurs charges that she intends to pay but not in accordance with the terms that govern the use of the card? Put another way, the question is whether a cardholder commits actual fraud when she makes charges when she knows that she will be in default in a few days.

---

1. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which the District Court has jurisdiction under 28 U.S.C. § 1334(b)(1) and that the District Court has referred to this Court pursuant to 28 U.S.C. § 157(a) and LR 83.7, NDGa. The Court has authority to hear and determine it pursuant to 28 U.S.C. § 157(b)(1).

Having received briefs from the parties, the Court now addresses this remaining question of law.

The Eleventh Circuit addressed the question of the dischargeability of credit card debt under former § 17a(2) of the former Bankruptcy Act of 1898, as amended, in *First National Bank of Mobile v. Roddenberry*, 701 F.2d 927 (11th Cir.1983). Like § 523(a)(2) of the current Bankruptcy Code, enacted by the Bankruptcy Reform Act of 1978 as part of a comprehensive revision of the bankruptcy laws, former § 17a(2) provided an exception from discharge for a debt for obtaining money or property by false pretenses or false representations.

Applying the Fifth Circuit's ruling in *Davison–Paxon Co. v. Caldwell*, 115 F.2d 189 (5th Cir.1940), *cert. denied*, 313 U.S. 564, 61 S.Ct. 841, 85 L.Ed. 1523 (1941), the *Roddenberry* court concluded that a credit card user does not obtain money or property by false pretenses or false representations unless and until the credit card issuer has "unequivocally and unconditionally revoked the right of the cardholder to further *possession and use* of the card, and until the cardholder is aware of this revocation." *Roddenberry*, 701 F.2d at 932 (emphasis in original). The District Court for the Northern District of Georgia has applied the same analysis of false pretenses and false representations in the context of credit card debt under § 523(a)(2) of the Bankruptcy Code. *Citibank (South Dakota), N.A. v. Kim*, Civ. No. 1:02–CV–0314–JOF (slip opinion), 2003 U.S. Dist. Lexis 25566 (N.D. Ga. 2003). *Accord, e.g., Chase Manhattan Bank, N.A. v. Ford (In re Ford)*, 186 B.R. 312, 317–20 (Bankr.N.D.Ga.1995); *Chase Manhattan Bank (U.S.A.) v. Carpenter (In re Carpenter)*, 53 B.R. 724, 727–30 (Bankr.N.D.Ga.1985). See *FDS National Bank v. Alam (In re Alam)*, 314 B.R. 834, 838–39 (Bankr.N.D.Ga.2004) (discussing *Kim's* application of *Roddenberry* to § 523(a)).

■ Unlike former § 17a(2), current § 523(a)(2) provides an exception from discharge for debts for money or property obtained by "actual fraud." As this Court explained in *FDS National Bank v. Alam (In re Alam)*, 314 B.R. 834, 838–39 (Bankr. N.D.Ga.2004), a creditor cannot, under the principles of *Roddenberry* and *Kim* establish "actual fraud" based on the theory that the user of a credit card makes implied representations, with each use of the card, of the ability and intent to pay the debts thereby incurred. *Id.* at 839–40.

■ But the existence of a fraudulent misrepresentation is not necessary to an actual fraud claim under § 523(a)(2). As *Alam* observed, "actual fraud" is "a much broader term than false pretenses or false representation and may encompass 'deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another.'" *Alam*, 314 B.R. at 840, *quoting McCLellan v. Cantrell (In re Cantrell)*, 217 F.3d 890, 893 (7th Cir.2000).

The *Alam* court noted that the Seventh Circuit described fraud in *McClellan* as follows, *id.*:

Fraud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth. No definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all reprise, trick, cunning, dissembling, and any unfair way by which another is cheated. *Alam* also noted that a debtor commits actual fraud when she "intentionally en-

gages in a scheme to deprive or cheat another of property or a legal right."

*Alam,* 314 B.R. at 841, *quoting Mellon Bank, N.A. v. Vitanovich (In re Vitanovich),* 259 B.R. 873, 877 (6th Cir. BAP 2001).

Under these principles, the *Alam* court concluded, "[A] debtor commits actual fraud for purposes of § 523(a)(2)(A) if the debtor uses a credit card without the actual, subjective intent to pay the debt thereby incurred." *Accord, e.g., In re Ford,* 186 B.R. 312, 319–320 (Bankr.N.D.Ga.1995); *In re Carpenter,* 53 B.R. 724 (Bankr. N.D.Ga.1985).

The question here is whether fraud exists, notwithstanding a debtor's actual subjective intent to pay a debt, when the debtor makes charges when she knows that she will not pay—and therefore, by definition, does not intend to pay—the debt in accordance with the terms of the credit agreement.

It is helpful to begin with a simple hypothetical. Suppose that a borrower seeks a loan from a lender who agrees to lend money only if the borrower promises to pay it back in 30 days. Suppose further that the borrower agrees to pay within 30 days but knows that she will not pay it back until 90 days later.

In this example, the borrower *knows* that she will not pay the debt when she promised. Presumably the lender would not agree to extend credit for 90 days, or in any event did not have the opportunity to decide whether it would agree to such a term. The borrower has, therefore, made a promise that she knows she will not keep. Under a broad reading of *Alam,* the borrower has defrauded the lender by making a promise that she did not intend to keep when she made it.

It is not the breach of the promise that gives rise to a conclusion that fraud has occurred but the fact that the borrower had no intention of keeping the promise when she made it. Characterization of the transaction as fraudulent seems appropriate because of the expectation that, if the lender had known that the borrower intended to breach the agreement at the outset, it would not have extended credit.

This view may work well enough when the lending transaction takes place in a face-to-face session, as the example assumes. But problems arise in its application in the credit card context for two reasons.

First, a premise of the analysis is that the borrower made a false representation—that the debt would be paid at the agreed time. In the credit card situation, the representation must necessarily be an implied one because a credit card user makes no express representation when she uses the card. Moreover, the principles of *Roddenberry* and *Kim,* as amplified in *Alam* and other cases, preclude the invocation of a theory that a debtor who uses a credit card makes implied representations that can establish fraud.

A second premise of the analysis is that the lender in the illustration relied on the representation in that it would not have extended credit had it known that the borrower did not intend to pay on time and would not do so.

In the case of use of a credit card, no reliance exists. The initial problem is that no express representation occurred that would trigger a conscious decision on the credit card issuer's part. Second, it is difficult to assume that a debtor's failure to make a minimum payment is something on which a credit card issuer relies. It seems more likely that a credit card issuer expects some card holders to miss minimum payments for one reason or another because, among other things, the agree-

ment imposes additional interest and late charges if a minimum payment is missed. *E.g., Roddenberry,* 701 F.2d at 932–33. Indeed, after Ms. Allen missed the September 9 minimum payment in this case, American Express simply sent the next statement, due October 9, but took no action to revoke the card or limit its use. (Ex. 3 at 82–95). To the contrary, the post-default statement includes information encouraging her to continue to use the card. (Ex. 3 at 92, 94, 95); (*E.g.,* "If there are other places where you would like to see the Card accepted, please call the Customer Service number...." Ex. 3 at 95).

The *Roddenberry* court addressed the issue of a user's default under a credit card agreement in the analogous context of a debtor who makes credit card charges in excess of contractual credit limits. The court stated, 701 F.2d at 932 (citation omitted):

> The mere breach of credit conditions is of minimum probative value on the issue of fraud because [credit card issuers] willingly suffer credit extensions beyond contractual credit limits. Indeed, [issuers] have a definite interest in permitting charges beyond established credit limits because of the high finance charges typical in such transactions. [Issuers] are willing to risk non-payment of debts because that risk is factored into the finance charges. Because the risk is voluntary and calculated, section 17a(2) should not be construed to afford additional protection for those who unwisely permit or encourage debtors to exceed their credit limits.

■ Like a credit card user who uses her card when such use exceeds her credit limit, a borrower who uses her card knowing that she will not make the required minimum payment is committing a knowing breach of the credit agreement. The

same rule applies: breach of a contractual obligation does not amount to fraud.

The *Roddenberry* court noted two principles that guide the analysis of the dischargeability of credit card debts. First, discharge exceptions are to be narrowly construed. Second, "improvident" creditors do not receive special protections in bankruptcy for the assumption of "common business risks." *Roddenberry,* 701 F.2d at 932. *Accord, e.g., In re Ford,* 186 B.R. 312, 319–320 (Bankr.N.D.Ga.1995).

■ *Alam* and other cases establish the principle that fraud includes incurring a debt that a debtor does not intend to pay. Extension of this analysis to include the incurring of debt at a time when the debtor knows that she will not comply with the terms of a credit agreement is inconsistent with the teaching of *Roddenberry.* Such an extension would require a broad, not a narrow, construction of the fraud exception to discharge and would result in protection against business risks that a credit card issuer expects.

■ The Court, therefore, declines to extend the concept of actual fraud in the context of a credit card debt beyond the test that the *Alam* principles establish: actual fraud requires a factual finding that the debtor incurred charges without the actual, subjective intent of paying. The fact that a credit card user makes charges in actual or contemplated breach of the terms of the credit agreement does not constitute actual fraud within the meaning of § 523(a)(2).

The Court has found as a matter of fact that Ms. Allen intended to pay all of the charges she incurred. Accordingly, the Court concludes that all of the charges Ms. Allen made are not excepted from discharge under § 523(a)(2).

Ms. Allen's conduct, though troublesome, does not fit within any of the various

descriptions of what constitutes "actual fraud" that *Alam*, 314 B.R. 834, discusses. As *Alam* stated (interior quotes and citations omitted), fraud includes "deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another," *id.* at 840, and "all reprise, trick, cunning, dissembling, and any unfair way by which another is cheated," *id.* at 841, or occurs when a debtor "intentionally engages in a scheme to deprive or cheat another of property or a legal right." *Id.* at 841. The common thread in all of these descriptions is the existence of some form of cheating through some sort of unfair or deceptive conduct.

█ Ms. Allen's intent to pay the debts she incurred negates any conclusion that she engaged in a scheme to cheat American Express. The fact that that American Express's ordinary business practices contemplated the continued extension of credit to her notwithstanding the fact that she might miss a minimum payment negates the idea that her use of the card immediately before, as she knew, she would not make the minimum payment, was unfair or deceptive. She used her credit card as the agreement permitted and faced consequences because of her expected default in the form of additional fees. But her use of the card—with the intent to pay the charges she incurred—was a type of breach that American Express contemplated and did not deprive American Express of its right to collect or any other property or legal right.

American Express urges the Court to apply the ruling in *J.C. Penney Co., Inc. v. Shanahan (In re Shanahan)*, 151 B.R. 44 (Bankr.W.D.N.Y.1993), to conclude that Ms. Allen's conduct was fraudulent, asserting that it is "very similar" to the case here. (Plaintiff's Post–Trial Brief [Doc. 21] at 9.) As American Express's brief correctly points out, however, the *Shana-*

*han* court found as a fact that Ms. Shanahan knew she could not repay the debts she incurred and concluded that, therefore, the credit card debt was excepted from discharge for fraud even if the debtor had sincerely intended to pay the charges. (*Id.* at 9.) The *Shanahan* court reasoned that the fraud arose from Ms. Shanahan's overreaching by incurring a debt she knew she could not pay. *Shanahan*, 151 B.R. at 49.

*Shanahan* is inapplicable here for two reasons. First, contrary to the factual finding in *Shanahan*, this Court found that Ms. Allen had a reasonable basis for believing that she could pay the debts she incurred. Second, the principles of *Roddenberry* and *Alam* preclude reliance on a debtor's inability to pay debts as a basis for a finding of actual fraud, other than as evidence to be considered in evaluating a debtor's actual intent. The Court also notes that the *Shanahan* court specifically observed that it was dealing with a two-party card issued by a retail merchant, not a third-party card, which is the situation here. *Shanahan*, 151 B.R. at 48.

American Express also relies on *Sears Roebuck and Co. v. Faulk (In re Faulk)*, 69 B.R. 743, 751 (Bankr.N.D.Ind.1986), for the proposition that, when a debtor uses a credit card "knowing he does not intend to pay for the goods or knowing he is unable to comply with the requirements of the contract, the debt may be nondischargeable." (Plaintiff's Brief at 8). *Faulk's* holding, however, was more limited.

After a thorough discussion of *Rodenberry*, the *Faulk* court stated the same rule that this Court adopted in *Alam:* "Where purchases are made through the use of a credit card *with no intention at that time to repay the debt,* that debt must be held to be nondischargeable pursuant to § 523(a)(2)(A)." *Faulk*, 69 B.R. at 753–54 (emphasis added). *See also Faulk, id.* at

**860**

754, (emphasis added) ("The Court simply holds that the 'revocation rule' of *Rodden-berry* applies, except where a creditor can prove by clear and convincing evidence that the debt was incurred through actual fraud, i.e., *where the debtor made the charges with no intention of paying for them.*").

The *Faulk* court ruled that the credit card debt was excepted from discharge based on its factual finding that, at the time the debtor used the card, he had "no present intention to pay for the same." *Faulk,* 69 B.R. at 758. *Faulk's* holding, therefore, is thoroughly consistent with the Court's ruling in this case.

*Faulk* does not properly support the proposition that Ms. Allen's anticipated breach of her obligation to make the minimum payment amounts to fraud. It arguably supports the contrary view. Citing *Roddenberry,* the *Faulk* court noted, "Mere violations of any contractual provisions do not constitute fraud." *Id.* at 754. Later, the *Faulk* court stated that the debtor's exceeding the credit limit on the card "is insufficient proof, in and of itself, that the debtor did not intend to pay the debt incurred on the credit card." *Id.* at 756.

In accordance with the foregoing, the Court concludes that none of Ms. Allen's indebtedness to American Express is excepted from discharge under 11 U.S.C. § 523(a)(2). The Court will enter a separate judgment in her favor.