In re Michael L. GNAGEY, Debtor.

CITIBANK (SOUTH DAKOTA),
N.A., Plaintiff,

v.

Michael L. GNAGEY, Defendant.

Bankruptcy No. 91–8931–9P7.
Adv. No. 91–706.

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

April 17, 1992.

Randolph A. Fabal, Tampa, Fla., for plaintiff.

Bill Berke, Cape Coral, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 case and the matter under consideration is a Complaint filed by Citibank (South Dakota) N.A. (Citibank) seeking a determination that debts owing by Michael L. Gnagey (Debtor) on two Citibank credit card accounts should be determined to be nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). The Court has considered the record and finds the facts relevant to the resolution of this matter as established at the final evidentiary hearing to be as follows:

Prior to the time relevant to the facts under consideration, the Debtor obtained two credit cards from Citibank, the first being a Citibank Visa (Visa) and the second a Citibank Preferred Visa (Preferred Visa). Between April 14, 1991, and May 28, 1991, the Debtor obtained three cash advances on the Visa card in the amounts of $1,500, $210 and $314.07 respectively. (Pl.'s Exh. § 1). Between January, 1991, and July, 1991, the Debtor made purchases and obtained cash advances in excess of $4,500 on his Preferred Visa card. During the same

time period, the Debtor made payments totalling only $500 (Pl.'s Exh. $ 2). The Debtor made no payments on either card after June of 1991. On July 31, 1991, the Debtor filed his voluntary Petition under the Bankruptcy Code.

The record reveals that by the date the Debtor filed his voluntary Petition, he had approximately 10 credit cards with a total outstanding balance of between $40,000 to $50,000. In 1990 the Debtor had a gross income of $23,888, which included more than $20,000 from the sale of his tree service business. The Debtor subsequently started a hauling business and in the first six months of 1991 had a gross income of between $5,000 to $7,000. At the same time, without even considering food and clothing, the Debtor had the following monthly expenses:

| | |
|---|---:|
| Various credit cards | $ 800.00 |
| Truck Payment | 275.00 |
| Loader Payment | 315.00 |
| Car Payment | 360.00 |
| Mortgage Payment | 575.00 |
| Loan Payment | 737.00 |
| Avco Payment | 55.00 |
| Levitz Payment | 50.00 |
| Life Insurance Premium | 86.90 |
| Child Support Payment | 450.00 |
| Total | $3,703.90 |

To meet these monthly payments, the Debtor borrowed some money from his parents and obtained cash advances from his credit cards. According to the Debtor, he was attempting to keep the hauling business afloat but was ultimately unsuccessful in light of the heavy debt service and poor economy.

Based on these acts, Citibank filed its Complaint based on § 523(a)(2)(A) of the Bankruptcy Code:

§ 523. Exemptions to Discharge.

(a) A discharge under section 727, 1141, 1228(a), 1228(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a state-ment respecting the debtor's or an insider's financial condition;

It is clear that the burden to establish a viable claim under an exception to the discharge is on the party who is challenging the dischargeability of a particular debt, and that party must prove the nondischargeability of a debt by the preponderance of the evidence. *Grogan v. Garner*, 498 U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). It is also well established that the mere use of a credit card by exceeding the credit limit is legally insufficient to establish a claim of nondischargeability of debts. *First Nat'l. Bank of Mobile v. Roddenberry*, 701 F.2d 927 (11th Cir.1983). In *Roddenberry*, Judge Hill, speaking for the court, held that when a financial institution issues a credit card, it assumes the risk that the cardholder may abuse the privilege of using the card by exceeding the credit limit. For this reason, until the privilege to use the card is effectively revoked, the mere fact that a cardholder exceeds the credit limit will not be itself suffice to establish a viable claim under § 523(a)(2)(A).

However, notwithstanding *Roddenberry*, if an issuer of a credit card establishes with the requisite degree of proof that at the time the cardholder used the card, he knew or should have known that he would not be able to meet his obligations incurred by using the card, then the cardholder has obtained money by actual fraud. Therefore, the debt falls within the exceptions to the general bankruptcy discharge. *In re Stewart*, 91 B.R. 489 (Bankr.S.D.Iowa 1988); *In re Lay*, 29 B.R. 258 (Bankr.M.D.Fla.1983).

Based on these principles, if it is shown that at the time the Debtor incurred the charges he knew that he would be unable to live up to the obligation and pay the charges, or if it appears that he had no intention to pay the charges when they were incurred, such conduct clearly constitutes actual fraud. Thus, the debt incurred by the misuse of the credit card would be nondischargeable under § 523(a)(2)(A) even though the Debtor was never told that his privilege to use the cards was revoked. *In*

**1010**

*re Dorsey,* 120 B.R. 592, 596 (Bankr. M.D.Fla.1990).

 Considering the relevant facts as established by the record, this Court is satisfied that the cash advances on the Visa card between April 14, 1991, and May 28, 1991, and the cash advances and purchases on the Preferred Visa card between January, 1991, and July, 1991, were made by the Debtor with full knowledge that he would not be able to pay for them. At the time the credit transactions in question took place, the Debtor's financial resources were limited. In 1990, the Debtor had a gross income of $23,888, or about $2,000 a month. In the first six months of 1991, the Debtor had a gross income of between $5,000 to $7,000. This translates into a *monthly* gross income for those first six months of between $833 to $1,166. During that same period of time, the Debtor's monthly expenses, without even considering the fact that he might get hungry or need a change of clothing, totalled $3,703.90, more than three times his average monthly income. The Debtor's explanation that he was attempting to keep a business afloat does not negate the fact that he was aware of his inability to repay the debt incurred.

Having concluded that the Debtor made the cash advances and purchases in question with full knowledge that he would be unable to pay for them, the portion of the obligation owed tó the Plaintiff attributable to these charges should be excepted from the overall protection of the general bankruptcy discharge by virtue of § 523(a)(2)(A). A separate Final Judgment will be entered in accordance with the foregoing.