**In re LeMASTER, Thomas L. and LeMaster, Karon L., Debtors.**

**IDAHO FIRST NATIONAL BANK, N.A., a National Banking Association, Plaintiff,**

**v.**

**Thomas L. LeMASTER and Karon L. LeMaster, Defendants.**

**Bankruptcy No. 91–03662. Adv. No. 91–6283.**

United States Bankruptcy Court, D. Idaho.

July 10, 1992.

---

Kimbell D. Gourley and W. John Thiel, Eberle, Berlin, Kading, Turnbow & McKlveen, Boise, Idaho, for plaintiff.

Howard R. Foley, Foley & Freeman, Meridian, Idaho, for defendants.

## MEMORANDUM OF DECISION

ALFRED C. HAGAN, Chief Judge.

In its complaint, the Bank alleges the issuance of two credit cards to the defendant/debtor, Thomas L. LeMaster, which were used by him for purchases and cash advances in the amount of $5,556.36. The complaint prays such sum be found to be nondischargeable under the provisions of 11 U.S.C. § 523(a)(2) or (6), the fraud and willful and malicious injury to property exceptions to discharge, respectively.

In their answer, the debtors admit the receipt of the credit cards and making the purchases and cash withdrawals. The debtors deny, however, the allegations concerning the nondischargeability of the debt and further assert affirmative defenses, including estoppel, waiver and release.

## DISCUSSION

In support of its fraud cause of action, the plaintiff alleges the debtor Thomas L. LeMaster made cash withdrawals and charges for goods and services against the account knowing he would not repay the funds as he was contemplating the filing of a chapter 7 petition. Thus, the actions were intentional and constitute "actual fraud" under the requirements of 11 U.S.C. § 523(a)(2)(A). In support of this contention, the plaintiff points to the following facts. The debtor, Thomas L. LeMaster, at the Section 341(a) meeting, indicated he first contemplated his chapter 7 filing in September of 1991. Between August and the time of the filing of the petition on November 18, 1991, LeMaster withdrew cash advances and made charges on the two accounts of approximately $2,820.00, while making minimal, or no, monthly payments on the accounts.

## HISTORY OF CREDIT CARD NO. 8227

The July 2, 1991 statement of Account Number 8227 indicates LeMaster owed $1,475.01 for past charges, had made no charges since the last statement, and had made a payment of $61.00 on the outstanding balance.

The August, 1991 statement also indicates no new charges, but LeMaster had paid $59.00 on the outstanding balance which, after deduction of the interest charge, left a balance of $1,436.27.

The September, 1991 statement reflects a payment of $1,416.01 on August 13, 1991 which almost paid off the outstanding balance of the account. The evidence indicates the funds used to make the payment were borrowed from Security Pacific Bank as part of the debtors' efforts to restructure their debt. Only one charge is reflected in the September statement in the amount of $29.44. The new balance was $55.23.

The October, 1991 statement reflects a payment of $10.00, charges of $45.00, a cash advance of $200.00 and a balance due of $292.31. This was the first cash advance taken by LeMaster during the relevant period of time.

In November, LeMaster made two cash withdrawals totaling $900.00, and made charges of $2,182.43 against the account, including a payment to his attorney of $1,235.05. The balance due was $2,519.47.

## HISTORY OF CREDIT CARD NO. 0904

The August, 1991 statement for Account No. 0904 indicates a balance of $689.96, payments since the previous statement of $1,882.86,[1] and cash advances totaling $500.00. No charges, other than the cash advances, had been made against the account.

The September, 1991 statement shows a balance due of $1,516.73, cash withdrawals again totaling $500.00 and charges of $263.40. Payment of $30.00 had been made during the period covered by the statement.

The October, 1991 statement shows a balance due of $2,223.82, cash withdrawals totaling $340.00 and charges of $238.00. No payments had been made on the account since the last statement date. The statement advises the account is $61.00 past due.

In November, the new balance was $3,031.89. The debtor had made cash withdrawals totaling $520.00, and charges of $230.30. No payments had been made on the account.

## ANALYSIS

■ In *In re Dougherty*,[2] the Bankruptcy Appellate Panel adopted a test for the determination of "actual fraud" in credit card nondischargeable cases brought under Section 523(a)(2)(A). The following factors should be considered in determining a debtor's actual intent concerning the repayment of the credit card debt.

1. The length of time between the charges made and the filing of bankruptcy;

2. Whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;

3. The number of charges made;

4. The amount of the charges;

5. The financial condition of the debtor at the time the charges are made;

6. Whether the charges were above the credit limit of the account;

7. Whether the debtor made multiple charges on the same day;

8. Whether or not the debtor was employed;

9. The debtor's prospects for employment;

10. Financial sophistication of the debtor;

11. Whether there was a sudden change in the debtor's buying habits; and

12. Whether the purchases were made for luxuries or necessities.[3]

■ Applying these factors to the present case, it is found the cash withdrawals and charges were made on the "eve" of the debtors' chapter 7 filing, a situation Thomas L. LeMaster had considered since sometime in September of 1991. As early as June, 1991, he had considered a filing, going so far as causing his attorney to prepare a chapter 7 petition and schedules. The debtors, however, apparently changed their minds about the filing, and there is evidence of an abandonment of the prospect of filing in an effort to restructure their debt.

The number and amount of the charges is significant in determining the status of the debtor's subjective intent. The cash withdraws began in October and continued until November 7, 1991, a period of eleven days prior to the chapter 7 filing. Thomas L. LeMaster was obviously aware of his precarious financial condition. He occasionally made multiple charges on the same day against the card accounts and the use of both cards was increased in October, 1991. LeMaster was gainfully employed in a secure position with the Idaho National Guard. He is financially sophisticated. A discernable change in buying habits is evident in October and November, but the

---

**1.** Also from the Security Pacific loan proceeds.

**2.** 84 B.R. 653 (9th Cir.BAP 1988).

**3.** 84 B.R. at 657 (citing *In re Faulk,* 69 B.R. 743 (Bankr.N.D.Ind.1986)).

charges and cash withdrawals were, for the most part, for necessities.

Of major significance are the billings of Thomas L. LeMaster's attorney and the payment made to the attorney by credit card Account Number 8227 on October 23, 1991. The billings are inconsistent with the payment. There are no billings in evidence for the months of October or November, 1991, but billings for the months of July, August, and December of 1991 indicate only a charge of $400.00 for preparation of the chapter 7 petition and schedules, and ultimately a credit given for this charge. From these billings, it is concluded the charge of $1,235.05 on October 23, 1991 was for the preparation and filing of the debtors' chapter 7 petition in the month of October, 1991. The petition was filed on November 18, 1991, a period of 28 days from the payment. 11 U.S.C. § 523(a)(2)(C) allows 20 days for the presumption of nondischargeability of cash withdrawals to apply.[4] Although outside the 20 day limit for the presumption to apply, at the time Thomas L. LeMaster met with his attorney and paid for a chapter 7 proceeding, he must have known he would not be paying the credit card charges.

As expressed later in this opinion, the requisite intent necessary for "actual fraud" did not exist on the part of LeMaster in August or September of 1991. Yet LeMaster must have made the decision to file the chapter 7 prior to the time he paid his attorney the $1,235.05 on October 23, 1991. For purposes of determining an appropriate date, I will use the 20 day period suggested by Section 523(a)(2)(C) as a guide. This is consistent with LeMaster's initiation of the cash withdrawals. Thus, all withdrawals and charges made on and after October 3, 1991 will be included in the nondischargeability category.

The conclusion will thus be made the post-October 3, 1991 charges on both accounts constitute a nondischargeable debt in the amount of $3,315.15.

As to the remainder of the cash withdrawals and charges in issue, it is found Thomas L. LeMaster made the charges without the requisite intent necessary to constitute actual fraud (i.e., intention not to pay for those items). The fact these funds went mainly for necessities and the fact Thomas L. LeMaster was trying to meet his obligations under the strained circumstances occasioned by his domestic relation and child custody problems support this finding. It is further found LeMaster was making an effort to restructure his debt and avoid a chapter 7 filing during this period of time as evidenced by the payment of the credit card balances in August of 1991.

Of further consideration is the caveat of Judge Volinn in In re Karelin,[5] wherein he states:

Care must be taken to stop short of a rule that would make every desperate, financially strapped debtor a guarantor of his ability to repay, on pain of nondischargeability. Such a rule would unduly expand the "actual fraud" discharge exception by attenuating the intent requirement. A substantial number of bankruptcy debtors incur debts with hopes of repaying them that could be considered unrealistic in hindsight. This by itself does not constitute fraudulent conduct warranting nondischarge.

The allegation in the plaintiff's complaint alleging grounds for a decree of nondischargeability based on Section 523(a)(6) will be afforded similar treatment. The post-October 3, 1991 cash withdrawals and charges for goods and services constitute a

---

4. 11 U.S.C. § 523(a)(2)(C) provides:
(C) for purposes of subparagraph (A) of this paragraph, consumer debts owed to a single creditor and aggregating more than $500 for "luxury goods or services" incurred by an individual debtor on or within forty days before the order for relief under this title, or cash advances aggregating more than $1,000 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within twenty days before the order for

relief under this title, are presumed to be nondischargeable; "luxury goods or services" do not include goods or services reasonably acquired for the support or maintenance of the debtor or a dependent of the debtor; an extension of consumer credit under an open end credit plan is to be defined for purposes of this subparagraph as it is defined in the Consumer Credit Protection Act (15 U.S.C. 1601 et seq.).

5. 109 B.R. 943, 947–48 (9th Cir.BAP 1990).

conversion of the Bank's property.[6] The pre-October 3, 1991 cash withdrawals and charges, while done intentionally, were not done "without just cause or excuse" and were not "acts that necessarily produced harm" and therefore are found not to have been done with malice.[7]

The debtors are not entitled to relief under their affirmative defenses of estoppel, waiver, or release.

This opinion may serve as formal findings of fact and conclusions of law. Counsel for the plaintiff may prepare an appropriate form of judgment.

---

**6.** See Judge Pappas' analysis in *In re Brammer*, 91 I.B.C.R. 277.

**7.** *In re Littleton*, 942 F.2d 551 (9th Cir.1991); *In re Cecchini*, 780 F.2d 1440 (9th Cir.1986).