In the Matter of Ronald G. SPARKS.

**CHASE MANHATTAN BANK, N.A., Appellant,**

v.

**Ronald G. SPARKS, Appellee.**

**Tazewell Shepard, Trustee.**

No. BK 91–82998.

Adv. No. 92–80061.

Civ. A. No. 92–G–2545–NE.

United States District Court, N.D. Alabama, Northeastern Division.

April 15, 1993.

Denise Deason Toyne, Malvern, PA, for Chase Manhattan Bank.

Philip A. Geddes, Decatur, AL, for Ronald G. Sparks.

Tazewell T. Shepard, III, Wilmer & Shepard, trustee.

## *MEMORANDUM OPINION*

GUIN, Senior District Judge.

This cause comes before the court on appeal from the United States Bankruptcy Court for the Northern District of Alabama, Northern Division, seeking a determination of nondischargeability of a debt under 11 U.S.C. § 523(a)(2)(A).

On December 27, 1991, Ronald G. Sparks [hereinafter referred to as debtor] filed a voluntary Chapter 7 bankruptcy petition under case number BK–91–82998–EDB. On January 14, 1992, the clerk of the court served notice of the first meeting of creditors scheduled for February 7, 1992. The meeting was held and concluded. On April 2, 1992, The Chase Manhattan Bank, N.A. [hereinafter Chase], timely filed a complaint to determine the dischargeability of debt pursuant to 11 U.S.C. § 523(a)(2)(A) under adversary number AP–92–80061.

The clerk of the court issued a summons and notice of pretrial conference in an adversary proceeding on April 6, 1992. A pretrial conference was set for May 19, 1992. The debtor, having been served with

the summons and complaint on April 6, 1992, filed his answer on or about April 14, 1992. Thereafter, in lieu of the pretrial conference scheduled for May 19, 1992, counsel for the parties conferred and notified the clerk that they had set discovery deadlines and requested that a trial setting be scheduled after a 90 day discovery period.

On May 15, 1992, the clerk of the court served a notice of trial, scheduling the trial of the adversary proceeding for August 17, 1992.

On June 8, 1992, debtor and his counsel were served with plaintiff's first set of interrogatories, first request for admissions, and first request. for production of documents. Debtor served his responses to plaintiff's discovery requests on July 10, 1992.

Trial of the adversary proceedings was held August 17, 1992, before the Honorable Edwin D. Breland. On September 4, 1992, Judge Breland issued an order and. memorandum opinion finding that the debt owed to the plaintiff was discharged under 11 U.S.C. § 523(a)(2)(C). Judge Breland did not rule on or discuss whether the debt was nondischargeable under 11 U.S.C. section 523(a)(2)(A).

Plaintiff timely filed its notice of appeal on September 10, 1992. This court has been asked to determine whether the ruling of the bankruptcy court is clearly erroneous. The case comes before the court on facts set forth below.

The debtor, a college educated businessman, has been in the moving and storage business since 1964. He has served as manager and president of two companies since 1969.

In July of 1982, the debtor applied for and obtained a Chase Visa credit card. In March 1987, he accepted a solicitation for a pre-approved Chase Advantage credit line account accessed by use of checks provided to him. Before 1992 the debtor had not been in default on either account.

In May 1990, the debtor's wife sought a divorce. The debtor was removed from his position and employment at White Transfer & Storage Company, Inc. [hereinafter White]. The only property the debtor was awarded in the divorce proceeding was his interest in Sparks Moving and Storage, Inc. [hereinafter Sparks], and one bedroom suite.

In May 1991, White filed suit against the debtor and Sparks for taking customers previously serviced by White. In August 1991, the assets of Sparks were frozen and seized by order of the court. Approximately $27,000.00 belonging to Sparks was placed in escrow.

Beginning August 22, 1991, all profits of Sparks were required to be turned over to the escrow account. Although the debtor's business was making a profit, seizure of the assets and profits left him without operating funds. The debtor's total 1991 income from Sparks was only $10,500.00.

The debtor's September, October, and November 1991 Chase Visa account had a balance ranging between four and five hundred dollars. The minimum payment due each of the three months was paid. The debtor incurred no charges on his Chase Advantage line of credit during the same time period until, on November 22, 1991, he issued a check on this line of credit to Sparks for $1,500. The funds were used to pay salaries and expenses for Sparks.

During the week of December 3, 1991, the lawsuit brought by White went to trial. A jury verdict was issued December 6, 1991, against the debtor. A judgment in the amount of $229,741.00 was entered against him December 9, 1991. The debtor had no money to pay the judgment.

Three days after the jury verdict and the day judgment was entered, December 9, 1991, the debtor wrote a check payable to cash for $5,500.00. Thereafter, between December 16, 1991, and December 23, 1991, he issued 15 checks on the Chase Advantage line totalling $3,140.38. On December 27, 1991, less than 20 days after the $229,-741.00 judgment was entered against him and only four days after he issued the last check against the Chase line of credit, the debtor filed his Chapter 7 bankruptcy petition.

Chase has appealed the ruling of the bankruptcy judge, contending that the bankruptcy court's failure to render a decision regarding whether the debt owed to the plaintiff was nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) was clearly erroneous. Chase maintains that the failure of the bankruptcy court to raise the issue of whether the debt owed to the plaintiff was nondischargeable under 11 U.S.C. § 523(a)(2)(C) was clearly erroneous.

The bankruptcy court found that the debt owed to the plaintiff was dischargeable under 11 U.S.C. § 523(a)(2)(C) which provides exceptions to discharge. Pertinent wording follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

.    .    .    .    .

(2) for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by—

.    .    .    .    .

(C) ... consumer debts owed to a single creditor and aggregating more than $500 for "luxury goods or services" incurred by an individual debtor on or within forty days before the order for relief under this title, or cash advances aggregating more than $1,000 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within twenty days before the order for relief under this title, are presumed to be nondischargeable; "luxury goods or services" do not include goods or services reasonably acquired for the support or maintenance of the debtor or a dependent of the debtor; an extension of consumer credit under an open end credit plan is to be defined for purposes of this subparagraph as it is defined in the Consumer Credit Protection Act (15 U.S.C. 1601 et seq.);

■ Inclusion of the above section of the code was to prevent a debtor contemplating bankruptcy from "loading up" in anticipation of filing bankruptcy. The presumption of no intention to repay can be rebutted.

The debtor must demonstrate nonfraudulent intent in connection with the obligation. *In re Orecchio*, 109 B.R. 285, 290 (Bankr.S.D.Ohio 1989). "[T]he Debtor's rebuttal evidence must raise a substantial doubt in the mind of the trier of fact as to the existence of the presumed intent." *Id.* If the debtor successfully rebuts the presumption, the creditor is forced to prove intent under Section 523(a)(2)(A), set forth below:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

.    .    .    .    .

(2) for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

■ Since the bulk of the indebtedness was incurred within 20 days of the date of filing bankruptcy, the plaintiff could have asserted a claim under Section 523(a)(2)(C). It did not. Chase based its claim on Section 523(a)(2)(A). The overwhelming evidence indicates the debtor lacked the money to repay the judgment entered before he incurred the bulk of the debt to Chase. The debtor knew or should have known he was unable to pay the Chase debts as he incurred them. If he used the credit card knowing he was unable to pay for the purchases [or debts incurred], the cardholder has obtained money by actual fraud. *In re Meeks*, 139 B.R. 559, 561 (Bankr. M.D.Fla.1992); *In re Gnagey*, 138 B.R. 1008, 1009 (Bankr.M.D.Fla.1992); *In re Rodriguez*, 138 B.R. 112, 115 (Bankr. S.D.Fla.1992); *In re Preece*, 125 B.R. 474, 478 (Bankr.W.D.Tex.1991). Under these holdings, the debt owed to plaintiff is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

■ The degree of proof is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

In the instant case the debtor knew or should have known he did not have the ability to repay the debts he was incurring. His only source of income was from the assets and income of his business which had been frozen for months. He clearly knew or should have known that he could not repay the $8,640.38 incurred after the jury verdict and subsequent judgment in the amount of $229,741.00 was rendered against him. Incurrence of debt after that time amounts to fraud. Debts incurred by fraud are not dischargeable.

Accordingly, the debtor's debt to Chase in the amount of $8,640.38, the amount incurred **after** the verdict and judgment were entered against him, is not discharged. The bankruptcy court's finding that this debt was discharged is clearly erroneous and due to be reversed. Rule 8013 of the Bankruptcy Rules [1]; *In re Kennemer*, 143 B.R. 275, 278 (N.D.Ala.1991); *In re Fielder*, 799 F.2d 656, 657 (11th Cir. 1986)

An order consistent with this opinion is being entered contemporaneously herewith.

DONE and ORDERED.

---

1. "On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witness."