**In re Lamar S. STOKES and Joan B. Stokes, Debtors.**

**SUN BANK, N.A., Plaintiff,**

v.

**Lamar S. STOKES and Joan B. Stokes, Defendants.**

**Bankruptcy No. 92–12297–9P7. Adv. No. 92–929.**

United States Bankruptcy Court, M.D. Florida, Fort Myers Division.

June 24, 1993.

Scott W. Spradley, Orlando, FL, for plaintiff.

Leonard L. Liszewski, Ft. Myers, FL, for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case, and the matter under consideration is the dischargeability vel non of the debt admittedly due and owing by Lamar S. Stokes and his wife, Joan B. Stokes (Debtors) in the amount of $10,651.88. The claim of nondischargeability is asserted by Sun Bank, N.A. (Bank) who contends that this obligation should be excepted from the overall protective provisions of the general bankruptcy discharge because the Debtors obtained credit when they had no intent to repay the same or they knew they lacked the ability to repay the obligation. Thus, according to the Bank, this debt is nondischargeable by virtue of § 523(a)(2)(A). In addition, the Bank also seeks the award of reasonable fees and costs based on *Transouth Financial Corp. of Florida v. Johnson*, 931 F.2d 1505 (11th Cir.1991). The facts established at the final evidentiary hearing relevant to the matter under consideration can be summarized as follows.

The Debtor, Lamar S. Stokes (Mr. Stokes), was at the time relevant employed by the Island Inn Resort on Sanibel Island, Florida in management relating to general maintenance and groundskeeping, and had been since 1985. He earned approximately $30,000.00 per year. His wife, Joan (Mrs. Stokes), was also employed initially by GE Corporation but later by one Timothy Murdy and ultimately by an entity known as Sanctuary Development.

According to the Statement of Financial Affairs filed by the Debtors, the Debtors' gross taxable income during 1992 was $26,680.00 and during 1991, $27,480.00. In response to Question Two of the Statement of Financial Affairs, the Debtors indicated that they had no income other than from employment.

It appears that in February, 1988, the Debtors purchased a home located on Sanibel Island at a cost of $150,000.00. The property was encumbered by two mortgages. The first mortgage required a monthly payment of $645.00 and, the second of $350.00. Some time later, the Debtors refinanced the home with Household Financial Corporation and as a result of the refinancing, the monthly payments increased rather than decreased and reached $1,400.00 per month.

In late 1990, the Debtors refinanced their home again and obtained an additional loan in the amount of $210,000.00 from Centrust Mortgage (Centrust). The proceeds of this loan retired the two earlier mortgages but again increased the monthly payments required to service this mortgage to $1,834.54 plus $200.00 per month for tax escrow. In addition, the Debtors also had to pay approximately $150.00 for insurance, including flood insurance. Thus, their total fixed monthly obligation on this mortgage reached $2,172.54. It appears that the Debtors obtained net proceeds of $38,000.00 from Centrust, a loan which they used to pay off all of the outstanding credit card obligations, with the exception of a balance slightly in excess of $1,000.00, which remained unpaid.

It appears from Schedule F filed by the Debtors that between late 1990 and July

23, 1992, when they signed their bankruptcy petition, the Debtors were indebted to 17 issuers of credit cards for purchases and cash advances in the total amount of $57,-331.87. It is without dispute that during the relevant time, the Debtors' disposable income was $2,390.00 per month against fixed monthly expenses, not including the minimum payments required on the credit cards, of $3,261.00. Thus, it is without doubt that the Debtors had a negative cash flow of approximately $871.00 each month. It appears that during the same period, the Debtors kept their obligation on the mortgage encumbering their home current and they are still current. It is admitted by the Debtors that their monthly income was insufficient to make the monthly mortgage payments and to meet their other necessary living expenses, and that they were only able to keep the mortgage current by obtaining cash advances on their credit cards. Although Mr. Stokes claims that he had extra income of $5,100.00 in 1991 which, parenthetically, was not disclosed on his Statement of Financial Affairs, he suffered a loss in the very same year and his total extra income for 1992 was only $1,175.00. This supplemental income was derived from a contract he obtained with the State of Florida to trap raccoons, and from occasionally playing in a band. However, neither of these side jobs produced any meaningful improvement in the financial condition of the Debtors.

Basically, these are the facts on which the Bank contends that the debt owed by the Debtors to the Bank should be declared nondischargeable pursuant to § 523(a)(2)(A) of the Bankruptcy Code. This Section provides:

§ 523. Exceptions to Discharge.

(a) A discharge under section 727, 1141, 1228(a), 1228(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

█ The standard of proof required to prove actual fraud under 11 U.S.C. 523(a)(2)(A) is proof by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). To prove actual fraud under this Section, the Plaintiff must prove by a preponderance of the evidence that the Debtor used the charge card while knowing that he had no intention to ever repay the debt or knowing that he will not be capable of meeting the obligations incurred through the use of the card. *In re Stewart*, 91 B.R. 489 (Bankr.S.D.Iowa 1988); *In re Lay*, 29 B.R. 258 (Bankr.M.D.Fla.1983).

The classic scenario under the first proposition is present when the debtor consults an attorney for the purpose of filing bankruptcy and then makes charges on the credit card before filing bankruptcy. Under the second scenario, the debtor either has no income or has insufficient income to meet his other fixed monthly obligations and has no realistic basis to anticipate a substantial increase in his income in the near future.

█ Realizing the difficulty of defending the use of 17 credit cards, and incurring debts in excess of $57,000.00 by using the credit cards, the Debtors contend that they again attempted to refinance their home, that is for the third time, and intended to use the proceeds of this loan to pay off the credit card balances, but were unsuccessful because of the then-prevailing crisis in the Savings & Loan industry, and this is the reason why they were compelled to seek relief in the bankruptcy court.

This is not an acceptable defense. A realistic assessment of their entire picture should have left no doubt that the Debtors could not have honestly believed that they would be able to live up to their credit card obligations based on their disposable income and their inability to refinance their home. This being the case, this Court is satisfied that the Bank did establish with the requisite degree of proof all of the operating elements of a claim of nondischargeability under § 523(a)(2)(A).

There was nothing presented in support of the claim of nondischargeability against Mrs. Stokes and at the conclusion of the presentation of the claim, this Court announced that the claim of nondischargeability will be dismissed against the wife, Mrs. Stokes. A separate final judgment will be entered in accordance with the foregoing.