In the Matter of Lee J. FORD, Debtor.

The CHASE MANHATTAN
BANK, N.A., Plaintiff,

v.

Lee J. FORD, Defendant.

Bankruptcy No. A94–69516–WHD.
Adv. No. 94–6752A.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Aug. 29, 1995.

D. Ruth Primm, Atlanta, GA, for plaintiff.

M. Buffy Blue, Paul L. Hanes, P.C., Atlanta, GA, for defendant.

## *ORDER*

W. HOMER DRAKE, Jr., Bankruptcy Judge.

Currently before the Court in these proceedings is the Motion for Summary Judgment of Lee J. Ford (hereinafter "the Debtor"). The Debtor's motion comes in response to a Complaint to Determine Dischargeability of Debt, filed by Chase Manhattan Bank, N.A. (hereinafter "Chase"). These matters fall within the subject matter jurisdiction of the Court, *see* 28 U.S.C. § 157(b)(2)(I), and they will be disposed of as provided in the Findings of Fact and Conclusions of Law which follow.

### FINDINGS OF FACT

The factual background to this proceeding remains largely undisputed. On June 1, 1979, the Debtor set up a credit card account

with Chase. The Debtor held this card, numbered 4226064031237, for quite some time, using it without incident during those initial years. However, in May of 1993, the Debtor and his wife were divorced, and this event dramatically changed the Debtor's financial picture. Pursuant to that divorce decree, a Georgia court ordered the Debtor to turn over approximately 47% of gross monthly income in the form of child support and property settlement payments.[1]

The Debtor quickly fell behind in those obligations and, for several months, attempted to negotiate a more feasible arrangement with his ex-wife.[2] No such accord could be reached, and the Debtor's divorce-related arrearages soon climbed to $16,950.00. The Debtor's ex-wife then enlisted the aid of the Cherokee County Superior Court. In a May 1994 Order which characterized the Debtor's failure to pay as an act of contempt, the Superior Court gave him twenty-four hours to produce $11,450.00 of the overdue payments. The court also ordered that, if the Debtor had not remitted the funds by the deadline, the county sheriff was to incarcerate him until he produced the funds. Faced with this ultimatum, the Debtor took $9000.00 in cash advances from his Chase credit account and presented those funds to his ex-wife. The Debtor then resumed his attempts to resuscitate his finances, but these efforts soon proved fruitless. On July 11, 1994, he filed for bankruptcy as yet another property settlement payment was about to come due.

It is the Debtor's May 1994 cash advances, and the interest charges arising therefrom, which form the core of the instant controversy. Pointing to the Debtor's insolvency at the time of those withdrawals and his conse-quent inability to repay such a $9000.00 obligation, Chase argues that the Court should declare this debt non-dischargeable for "false pretenses, false representation, or actual fraud", pursuant to 11 U.S.C. § 523(a)(2)(A). In response to Chase's assertions, the Debtor avers that he had no such fraudulent intent to incur an obligation which he knew he never would pay. Specifically, the Debtor argues that, at the time of the withdrawals, he reasonably believed an impending sale of his residence would provide him with the funds to pay this $9000.00 debt to Chase within thirty days after its creation.[3] Accordingly, the Debtor asks this Court to grant his Motion for Summary Judgment on the question of whether this debt should be discharged in bankruptcy.

### CONCLUSIONS OF LAW

In accordance with Federal Rule of Civil Procedure 56 (applicable to bankruptcy under Fed.R.Bankr.P. 7056), this Court will grant summary judgment only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if it might affect the outcome of a proceeding under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party has the burden of establishing the right of summary judgment, *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991); *Clark v. Union Mut. Life Ins. Co.*, 692 F.2d 1370, 1372 (11th Cir.1982), and the Court will read the opposing party's pleadings liberally.

1. In the wake of his divorce, the Debtor faced monthly obligations which totalled approximately $3800.00, including $875.00 for child support. Additionally, the divorce court had ordered the Debtor to remit $20,000.00 in property settlement by making $1000.00 payments each month. At the time, the Debtor had a gross monthly income of $4627.92, which netted him $3458.78 once taxes and FICA had been deducted.

2. In addition to these attempts at compromise with his ex-wife, the Debtor took several steps which he hoped would improve his position. These efforts included listing his house for sale, refinancing his mortgage, and taking out a $6400.00 profit sharing loan.

3. The Debtor apparently had disclosed his financial straights to his realtor with the direction that the house be priced at such a discount as would guarantee an immediate sale. The realtor complied with this request and listed the Debtor's residence at a figure which he had calculated to attract a sale within thirty days. Unfortunately, this optimism by the Debtor and his agent proved inaccurate. Notwithstanding its bargain price, the house did not sell as expected.

*Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

In determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Rosen v. Biscayne Yacht & Country Club, Inc.,* 766 F.2d 482, 484 (11th Cir.1985). The moving party must identify those evidentiary materials which establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *see also* Fed.R.Civ.P. 56(e). Once the motion is supported by a prima facie showing that the moving party is entitled to judgment as a matter of law, the party opposing the motion must go beyond the pleadings and demonstrate that there is a material issue of fact which precludes summary judgment. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Martin v. Commercial Union Ins. Co.,* 935 F.2d 235, 238 (11th Cir.1991).

### I. The Basics of Section 523(a)(2)(A).

 The concept of discharging pre-existing debt forms one of the most primary tenets of bankruptcy policy. *See* 3 COLLIER ON BANKRUPTCY ¶ 523.05A (15th ed. 1995) (noting the Code's liberal policy). Indeed, "a central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.' " *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991) (citations omitted). At the same time, however, a separate equitable policy mandates that any such mechanism for an unencumbered fresh start only should redound to the benefit of those debtors who truly are unfortunate, yet honest. *See id.* at 286–87, 111 S.Ct. at 659–60; *see also Tran-South Fin. Corp. v. Johnson,* 931 F.2d 1505, 1508 (11th Cir.1991) (citing *Local Loan v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)). In light of these compet-

ing policy goals, Congress included the following provision in the Bankruptcy Code:

> (a) A discharge under section 722, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor of any debt—
>
> \* \* \* \* \* \*
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
>> (A) false pretenses, a false representation, or actual fraud
>
> \* \* \* \* \* \*

11 U.S.C. § 523(a)(2)(A). Thus, through section 523(a)(2)(A), the Code offers a means of denying those individuals who do not qualify as "honest but unfortunate debtors" the benefits of a fresh start. *Grogan,* 498 U.S. at 287, 111 S.Ct. at 659. Like other exceptions to discharge, however, the provisions of section 523(a)(2)(A) warrant narrow construction. *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915); *Schweig v. Hunter (In re Hunter),* 780 F.2d 1577, 1579 (11th Cir.1986).

 In practice, the creditor bears the burden of establishing non-dischargeability under section 523(a)(2)(A). *Hunter,* 780 F.2d at 1579. Specifically, the creditor must establish by a preponderance of the evidence that:

(1) the debtor made a false representation with the purpose and intention of deceiving the creditor;

(2) the creditor relied upon the debtor's representation;

(3) such reliance by the creditor was reasonable;

(4) the creditor suffered a loss as a result of that reliance.

*See Grogan,* 498 U.S. at 285–90, 111 S.Ct. at 658–61; *see also Hunter,* 780 F.2d at 1579 (citations omitted); *Signet Bank v. Keyes,* 959 F.2d 245 (10th Cir.1992); *Mfr's. Hanover Trust Co. v. Ward (In re Ward),* 857 F.2d 1082, 1088 (6th Cir.1988) (Merritt, J., dissenting).

## II. Implied Representations—The Inherent Difficulties in Applying Section 523(a)(2)(A) to Credit Card Transactions.

When one attempts to establish the dischargeability of a credit card debt under the above-mentioned criteria and principles, several problems quickly become apparent. Specifically, at the time of a credit card purchase, the cardholder and bank have no personal contact. *First Nat'l Bank of Mobile v. Roddenberry*, 701 F.2d 927, 930–31 (11th Cir.1983). Consequently, the cardholder cannot be said to have directly represented anything to the issuing bank. *Id.* Also, the bank has nothing upon which to base an act of reliance. *Id.*

To circumvent these problems of application, several courts have turned to a doctrine of "implied representation". Under this approach, the debtor always is said to have impliedly represented at the time of a credit card sale that: (1) he had the ability to pay the debt in question; and (2) he also had the intention of paying that debt. *See, e.g., Signet Bank v. Rawoot*, 14 F.3d 596 (4th Cir. 1993) (inability to repay justifies exception to discharge); *Sears Roebuck & Co. v. Naimo (In re Naimo)*, No. CIV.A. 95–456, 1995 WL 163598, at *1 (E.D.Pa. Apr. 6, 1995) (citations omitted); *Comerica Bank–Midwest v. Kouloumbris*, 69 B.R. 229, 230 (N.D.Ill.1986); *Mercantile Trust Co. v. Schmidt (In re Schmidt)*, 36 B.R. 459, 460 (E.D.Mo.1983). Having established these fictional forms of

holder-issuer representation, courts then utilize a presumption that the issuing bank reasonably relied on those factors in guaranteeing the payment at issue. *Mfr's. Hanover Trust Co. v. Ward (In re Ward)*, 857 F.2d 1082, 1087 (6th Cir.1988) (Merritt, J., dissenting) (citations omitted); *Mfr's. Hanover Trust Co. v. Turner (In re Turner)*, 23 B.R. 681, 684 (Bankr.D.Mass.1982).

Without doubt, the implied representation doctrine solves the problem of fitting credit card transactions within the section 523(a)(2)(A) criteria. However, the employment of such a fiction breeds its own series of concerns, the majority of which arise from the ability-implying prong of the doctrine. First, to the extent that it makes each card user an absolute guarantor of his ability to pay, the doctrine offends the balance of bankruptcy policy struck by section 523.[4] Second, inferring a guarantee of ability runs afoul of consumer practice and the natural course of events in the marketplace.[5] Third, using such a series of presumptions gives card-issuing creditors an unfair advantage over normal creditors, who have to establish each and every element of fraud before a court will consider their claims non-dischargeable.[6] Lastly, and most importantly, by constructing a separate implied representation of ability, the doctrine suggests that a breach of that duty, in and of itself, will present sufficient grounds for denying a debtor his discharge.[7] Faced with its inher-

4. As noted earlier, bankruptcy law favors the narrow construction of non-dischargeability provisions, so as to give the debtor the benefit of the doubt. *Gleason*, 236 U.S. at 562, 35 S.Ct. at 289; *Schweig*, 780 F.2d at 1579. Interpreting section 523 to make the debtor a guarantor of his own ability to pay clearly contradicts that policy at least to some extent. *Eashai v. Citibank (S.D.), N.A. (In re Eashai)*, 167 B.R. 181, 185 (9th Cir. BAP 1994); *Idaho First Nat'l Bank, N.A. v. LeMaster (In re LeMaster)*, 142 B.R. 927, 930 (Bankr.D.Idaho 1992).

5. As the *Carpenter* court pointed out, "Generally, people use credit cards because they do not have the present ability to pay. In fact, this is how credit card companies make their profits. They charge high interest rates on the unpaid portion of their card holders' accounts." *Carpenter*, 53 B.R. at 728.

6. *Sears Roebuck & Co. v. Faulk (In re Faulk)*, 69 B.R. 743, 753 (Bankr.N.D.Ind.1986) ("'implied representation analysis places credit card companies in a special category of creditors and makes their debts too easily dischargeable'") (quoting *Carpenter*, 53 B.R. at 728).

7. "Actual fraud consists of any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another." 3 COLLIER ON BANKRUPTCY ¶ 523.08[5] (15th ed. 1995) (citations omitted). Without proof of such malevolent intent, one has not established actual fraud, but instead merely "fraud implied by law" or "constructive fraud." Resincoff, *Dischargeability in Bankruptcy of Debts Incurred by "Purported Purchasers"*, 64 ST. JOHN'S L.REV. 253 (1990). Fraud implied by law cannot form the basis of a non-dischargeability action. *See* COLLIER at ¶ 523.08 ("insolvency or inability to pay is not enough; intent not to pay

ent problems, pro-creditor orientation and risks of misapplication, a majority of courts nonetheless have adopted the implied representation theory as the rule for credit card non-dischargeability issues. *See Citibank (S.D.), N.A. v. Dougherty (In re Dougherty)*, 84 B.R. 653, 655–56 (9th Cir. BAP 1988) (noting the majority view).

### III. Assumption of Risk—the Eleventh Circuit's Approach to Credit Card Non–Dischargeability.

In contrast to the majority's "implied representation" approach, the Eleventh Circuit has endorsed an analysis of credit card debts which tips the scales in the other direction, to strongly favor the interest of debtors.[8] In part, this attitude arises from the pre-Fifth Circuit split holding of *Davison–Paxon Co. v. Caldwell*, 115 F.2d 189 (5th Cir.1940). Rejecting an argument that a debtor may impliedly misrepresent himself by not disclosing his insolvency, the *Davison–Paxon* court held that only "where there is actual overt false . . . representation" will non-dischargeability be proper. *Id.* at 190–91.

The Eleventh Circuit revisited the issue of credit cards and dischargeability in *First Nat'l Bank of Mobile v. Roddenberry*, 701 F.2d 927 (1983). The *Roddenberry* court began by reaffirming the principles of *Davison–Paxon* and noting that the Fifth Circuit's holding still should govern the dischargeability of two-party transactions. *Id.* at 932. The court then went on to expand the *Davison–Paxon* holding and create a separate doctrine, specifically designed to accommodate "our credit card economy" and the consequent non-dischargeability claims of card issuers. *Id.* In the same breath that it announced this change, however, the *Roddenberry* court cautioned that any such revision of the rule for credit cards must be guided by the same principles enunciated in *Davison–Paxon*—that discharge exceptions are to be narrowly construed and that certain creditors should not get special favors in bankruptcy. *Id.* Consequently, the *Roddenberry* court constructed an "assumption of risk" doctrine, under which a creditor cannot establish the "false pretense" or "false representation" non-dischargeability of any debts which were incurred before it communicated revocation of card privileges to the debtor. *Id.* at 932–33. By finding that creditors assume the risk on all pre-revocation charges, the *Roddenberry* court thus fashioned a doctrine for credit card debts which, unlike the implied representation test, stayed true to the basic principles of the *Davison–Paxon* holding.

*Roddenberry* has generated great controversy, and much time has been devoted to speculation upon what it does or might say. *See, e.g., Dougherty*, 84 B.R. at 656 (speculating as to how broadly the "assumption of risk" theory extends); *Citibank (S.D.), N.A. v. Senty (In re Senty)*, 42 B.R. 456, 460–61 (Bankr.S.D.N.Y.1984); *First Deposit Credit Servs. Corp. v. Preece (In re Preece)*, 125 B.R. 474, 477 (Bankr.W.D.Tex.1991). Unfortunately, however, this focus of controversy has distracted attention from the truly important issues—what the holding does not say and how courts should proceed to fill those gaps in *Roddenberry*'s doctrine. For instance, the Eleventh Circuit based its *Roddenberry* decision upon the predecessor to current Code section 523(a)(2)(A). *See* BANKRUPTCY ACT OF 1898, ch. 541, s. 17, 30 Stat. 544 (current version at 11 U.S.C. § 523 (1988)). Unlike section 523(a)(2)(A), that older provision contained no reference to "actual fraud".[9] The *Roddenberry* Court pointed out this difference between the two provisions and noted that the inclusion of the "actual fraud" term might change its holding. *Roddenberry*, 701 F.2d at 930. However, the

is needed") (citing *Montgomery Ward & Co., Inc. v. Blackburn (In re Blackburn)*, 68 B.R. 870 (Bankr.N.D.Ind.1987)). Thus, a showing of mere inability to pay, because it only proves fraud implied by law, cannot support a 523(a)(2)(A) non-dischargeability action. *Id.*

8. In fact, many courts have criticized the Eleventh Circuit's approach as going to an extreme, tipping the scales so far in favor of debtors that

very few credit card debts will qualify as non-dischargeable. *See, e.g., Dougherty*, 84 B.R. at 656.

9. Specifically, section 17(a) of the Act provided for the non-dischargeability of "judgments in actions for frauds, . . . property [obtained] by false pretenses or false representations, or for willful and malicious injuries to the person or property of another." *Id.*

court specifically stated that it expressed no opinion with regard to the construction of that additional term. *Id.* Of course, this abnegation by the *Roddenberry* court necessarily begs the question, "What is 'actual fraud', and how exactly does it interface with the assumption of risk doctrine?"

### IV. Construing the Term "Actual Fraud".

Given the small percentage of dischargeability questions which involve post-revocation charges, very few credit debts will qualify as non-dischargeable for "false pretenses" or "false representation" under the *Roddenberry* standard. *Dougherty,* 84 B.R. at 656. Due to this fact, the type of construction which a court chooses to give the term "actual fraud" will determine the final outcome of most credit card dischargeability questions. This Court consequently believes that the matter warrants great consideration.

Within this Circuit, a recent trend has developed in which bankruptcy courts construe the term "actual fraud" as follows: if, when the debtor incurred the charges, either he had no intention of repaying the debt *OR* he had no ability to pay and should have known so, then he has committed actual fraud. *See Sun Bank, N.A. v. Stokes (In re Stokes),* 155 B.R. 785, 787 (Bankr.M.D.Fla. 1993); *Citibank (S.D.), N.A. v. Meeks (In re Meeks),* 139 B.R. 559, 561 (Bankr.M.D.Fla. 1992); *Citibank (S.D.), N.A. v. Gnagey (In re Gnagey),* 138 B.R. 1008, 1009 (Bankr. M.D.Fla.1992); *Citibank (S.D.), N.A. v. Rodriguez (In re Rodriguez),* 138 B.R. 112, 114 (Bankr.S.D.Fla.1992); *Am. Express Travel Related Servs., Inc. v. Dorsey (In re Dorsey),* 120 B.R. 592, 596 (Bankr.M.D.Fla.1990). Moreover, at least one district court appears to have adopted such a two-pronged interpretation of the term "actual fraud".[10]

This Court cannot help but take issue with such an interpretation of the term "actual fraud". First, as it is phrased in the alternative, this definition appears to make "inability to pay" an independent ground for denying discharge. Even the advocates of the implied representation doctrine reject such a modification as impermissible. *See In re Hoffman,* 934 F.2d 319 (4th Cir.1991) (debt dischargeable notwithstanding inability because no evidence of intent); *Comerica Bank–Midwest v. Kouloumbris,* 69 B.R. 229, 230 (N.D.Ill.1986) (implied representation must be made with the intent to deceive); *Schmidt,* 36 B.R. at 460 (intent always must be shown). If one does not have proof of the debtor's misrepresented intent, then one does not have proof of actual fraud. *Instead, one merely has fraud implied in law, which never will support a finding of non-dischargeability.* *See* COLLIER at ¶ 523.08 ("insolvency or inability to pay is not enough; intent not to pay is needed") (citing *Montgomery Ward & Co., Inc. v. Blackburn (In re Blackburn),* 68 B.R. 870 (Bankr.N.D.Ind. 1987)).

Second, and perhaps of even greater concern, the definition of "actual fraud" adopted by the trend merely amounts to a reconstitution of the "implied representation" doctrine. That is, the trend uses a hole in the *Roddenberry* holding to inject the implied representation doctrine as this Circuit's standard for discharging credit card debts. Setting aside the inherent flaws of the implied representa-

---

**10.** *See Chase Manhattan Bank, N.A. v. Sparks (In re Sparks),* 154 B.R. 766, 768 (N.D.Ala.1993).

The Court notes that it is bound to apply the orders of a district court which has heard a case on appeal and then returned that case to the bankruptcy court. Arguably, however, the binding authority of such district court decisions extends no further than the confines of that particular case. It, therefore, remains probable that district court opinions from the same district court only offer persuasive authority for bankruptcy judges hearing later cases. On this question, one court has stated: "[A] decision by a district judge is also not binding on bankruptcy judges in the district, because the bankruptcy court is a 'unit' of the district court, and not an inferior court. A district judge sits in the same court as the bankruptcy judges, and his or her decision, even on an appeal from a bankruptcy judge, is another decision of the same court. Such a decision has no binding authority on other judges in the same court, including bankruptcy judges."
*Fazio v. Growth Dev. Corp. (In re Growth Dev. Corp.),* 168 B.R. 1009, 1015 n. 5 (quoting *Coyne v. Westinghouse Credit Corp. (In re Globe Illumination Co.),* 149 B.R. 614, 619 (Bankr.M.D.Cal. 1993)).

tion doctrine,[11] this Court notes that the policy behind that doctrine is directly inapposite with the policy that this Circuit has chosen to govern such decisions.[12] As such, this current trend exploits a *Roddenberry* loophole to supplant that case's doctrine with a theoretically inconsistent philosophy. This Court does not find it appropriate to interpret the term "actual fraud" in such a clearly contradictory manner, so long as *Roddenberry* and the principles behind it remain the law of this Circuit regarding credit card non-dischargeability. *Accord Chase Manhattan Bank, N.A. v. Carpenter,* 53 B.R. 724, 728 (Bankr. N.D.Ga.1985) (Kahn, J.).

■ Rather, this Court finds that it must interpret the term "actual fraud" in accordance with the general policies and guidelines which this Circuit has endorsed in cases such as *Davison–Paxon* and *Roddenberry. See Birmingham Trust Nat'l Bank v. Case,* 755 F.2d 1474, 1476 (11th Cir.1985) (case law construing Bankruptcy Act section 17(a) should serve as guide for interpreting Code section 523(a)(2)(A)); *Carpenter,* 53 B.R. at 728. Specifically, this Court must define the term "actual fraud" so as to narrowly construe discharge exceptions and to avoid certain creditors getting special protections in bankruptcy for the assumption of common business risks. *Roddenberry,* 701 F.2d at 931.

■ Having considered these guidelines, this Court believes that the appropriate definition for "actual fraud" lies within the *Carpenter* decision. As Judge Kahn therein concluded, a debtor commits "actual fraud" when she misrepresents her intent to pay the debt.[13] Moreover, courts should determine the existence of that misrepresented intent by looking to the totality of the circum-

stances. *First Nat'l Bank of Red Bud v. Kimzey (In re Kimzey),* 761 F.2d 421, 424 (7th Cir.1985). Relevant points of consideration on the question should include:

(1) the length of time between the charges made and the bankruptcy;

(2) whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges are made;

(3) the number of charges made;

(4) the amount of the charges;

(5) the financial condition of the debtor at the time the charges are made;

(6) [whether] the debtor [made] multiple charges on the same day;

(7) whether or not the debtor was employed;

(8) the debtor's prospects for employment;

(9) whether there was a sudden change in the debtor's buying habits; and

(10) whether the purchases were made for luxuries or necessities.

*Carpenter,* 53 B.R. at 730. Lastly, this Court points out that the debtor's inability to pay the debt at the time that he incurred it may present indicia of an intent to defraud. *See id.; see also Eashai,* 167 B.R. at 185; *Bank One–Rockford, N.A. v. Mayer (In re Mayer),* 173 B.R. 373, 377 (N.D.Ill.1994). However, it must be considered along with all the other circumstantial evidence of intent, and mere inability to pay certainly should not constitute automatic grounds for finding a debt non-dischargeable. *Hoffman,* 934 F.2d at 319; *Eashai,* 167 B.R. at 185; COLLIER at ¶ 523.08 (citations omitted).

---

11. *See supra* text accompanying notes 4–7.

12. The implied representation doctrine founds itself on a policy very favorable to card-issuing creditors. *Sears Roebuck & Co. v. Faulk (In re Faulk),* 69 B.R. 743, 753(Bankr.N.D.Ind.1986) ("implied representation analysis places credit card companies in a special category of creditors and makes their debts too easily dischargeable") (quoting *Carpenter,* 53 B.R. at 728). By contrast, the Eleventh Circuit has adopted a policy approach towards credit card non-dischargeability which gives the benefit of the doubt to debtors rather than creditors. *See Dougherty,* 84 B.R. at 656 (noting the effect of this policy choice).

13. *Carpenter,* 53 B.R. at 729. This Court notes that other courts also have found this standard, rather than the implied representation theory, to present the appropriate interpretation of section 523(a)(2)(A)'s "actual fraud" reference. Among these are the Ninth Circuit Bankruptcy Appellate Panel, *Dougherty,* 84 B.R. at 657–58, and Judge Lindquist of the Northern District of Indiana's Bankruptcy Court. *Faulk,* 69 B.R. at 755.

## V. Application to this Case.

In the instant case, this Court finds that the Debtor did not incur any post-revocation credit charges. As such, under the *Roddenberry* standard, his debt to Chase does not qualify as non-dischargeable due to "false pretenses" or "false representations". *Roddenberry*, 701 F.2d at 932–33. Moreover, this Court finds that the Debtor did not misrepresent his intention of payment, so as to constitute "actual fraud". The Debtor made the charges in question well prior to filing bankruptcy,[14] and before he had consulted any attorney on the matter. He did not incur multiple charges of a small dollar amount. Nor did he incur several charges in the same day. At all times, the Debtor stayed below his credit limit on the Chase account. Lastly, the Debtor held an honest belief that, although incurring a substantial debt to Chase, he soon would be able to repay the obligation from the proceeds of his house's sale.

In short, the Court finds no evidence that this Debtor set out to incur charges which he had no intention of paying and then proceeded to deceive his creditor to the contrary. Bankruptcy protects a fool from his folly and will levy the penalty of non-dischargeability only against intentional wrong-doers. *Heinold Commodities & Sec., Inc. v.*

*Hunt (In re Hunt)*, 30 B.R. 425, 440–47 (M.D.Tenn.1983). Having found that the Debtor's plan of repayment had at least a reasonable possibility of success, and that no other circumstances suggest a misrepresentation of intent, this Court cannot conclude that this debt to Chase warrants non-dischargeable classification under section 523(a)(2)(A)'s "actual fraud" provision.

### CONCLUSION

In summary, this Court finds that none of the justifications for non-dischargeability found in 11 U.S.C. § 523(a)(2)(A) apply to the instant case. As such, no material question of fact exists, and the Debtor is entitled to judgment as a matter of law. The Debtor's Motion for Summary Judgment, therefore, is hereby **GRANTED.**

**IT IS SO ORDERED.**

---

14. In its briefs to this Court, Chase has argued that amended Code section 523(a)(2)(C) imposes a presumption that the debt owed to it by the Debtor is non-dischargeable. In pertinent part, that section provides:

> for purposes of [section 523(a)(2)(A)], consumer debts owed to a single creditor and aggregating more than $500 for "luxury goods or services" incurred by an individual debtor on or within forty days before the order for relief under this title, or cash advances aggregating more than $1000 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within twenty days before the order for relief under this title, are presumed to be nondischargeable
>
> \* \* \* \* \* \*

11 U.S.C. § 523(a)(2)(C) (amended 1994). Chase points out that The Bankruptcy Reform Act of 1994, P.L. 103–394 (enacted on October 22, 1994), at § 306, 108 Stat. 4150, (hereinafter "the Act"), amended section 523(a)(2) by extending its coverage to all such cash advances obtained within *sixty days* prior to the order for relief. Thus, reasons Chase, the Debtor must overcome

a presumption of this debt's non-dischargeability. Chase, however, fails to take into account the effective date of those 1994 amendments. Specifically, although these changes took effect on October 22, 1994, the Act clearly states that they "shall not apply with respect to cases commenced under title 11 before the date of the enactment of this Act." P.L. 103–394 (enacted on October 22, 1994), at § 702, 108 Stat. 4150 (appearing as 11 U.S.C. § 101 note). Thus, the unamended form of section 523(a)(2)(C) controls the present controversy and, because the Debtor obtained the cash advances in question more than 20 days prior to the order for relief, his debt to Chase does not warrant a presumption of non-dischargeability. As an aside, however, the Court notes that, even if the amended form of section 523(a)(2)(C) did govern this case, the evidence of non-fraudulent intent which the Debtor has presented to this Court would suffice to overcome any such presumption of non-dischargeability. *See Sparks*, 154 B.R. at 767 ("[t]he Debtor's rebuttal evidence must raise a substantial doubt in the mind of the trier of fact as to the existence of the presumed intent") (citations omitted).